**Mary S. KRALY, Plaintiff,**

v.

**NATIONAL DISTILLERS AND CHEM-ICAL CORPORATION, Defendant.**

**No. 70 C 1247.**

United States District Court,
N. D. Illinois,
Eastern Division.

Oct. 26, 1970.

James M. Wetzel, Jack C. Berenzweig, Hume, Clement, Hume & Lee, Ltd., Chicago, Ill., for plaintiff.

Charles W. Boand, George W. Thompson, Wilson & McIlvaine, Chicago, Ill., Marvin C. Soffen, Ostrolenk, Faber, Gerb & Soffen, New York City, for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This is a breach of contract action, filed originally in the Circuit Court of Cook County and removed to this Court under 28 U.S.C. § 1441. Plaintiff, Mary Kraly, alleges that a prior license agree-

ment, which National Distillers assumed as a successor in interest to the original licensee, is still in force and effect and that, therefore, defendant owes her certain unpaid royalties. The present motions before this Court are brought under Rules 12(b) and 12(f) of the Fed. R.Civ.P. to strike paragraphs 22, 26 and 27 of defendant's answer and to dismiss defendant's counterclaim.

On November 4, 1966, plaintiff, Mary Kraly, instituted suit in this court, 66 C 2016, against Sears, Roebuck & Co. (Sears) and H. B. Egan Manufacturing Co., Inc. (Egan). That suit alleged infringement of the same patent which is herein alleged to be invalid and, in that earlier suit, defendant Egan in its answer defended on the grounds of invalidity and fraud. On February 27, 1967, Egan and plaintiff entered into an agreement which provided that Egan would be licensed under the Kraly patent and that Egan would not "contest the validity of the licensed patent while this license continues in force." A stipulated motion to dismiss was filed on March 27, 1967, and that motion recited as a basis for the settlement and motion to dismiss, the "agreement" which had been reached between the parties. Pursuant to the agreed motion, this Court dismissed the action with prejudice.

In the instant case, plaintiff contends that, since defendant assumed all of the rights and obligations of Egan, it is bound by the agreement and related dismissal with prejudice and is thereby estopped to contest the validity of the Kraly patent. This is especially true, plaintiff claims, because of the position which defendant has taken with respect to the same patent in a Florida lawsuit. Defendant's position there, plaintiff urges, is incompatible with that advanced here. In the Florida suit, a defense of proper licensing under a license agreement has been asserted by defendant in a mismarking suit. Plaintiff urges that such a defense cannot be maintained there simultaneously with one of invalidity here because they are inconsistent and the Florida defense is tantamount to an admission of patent validity. Finally, plaintiff seeks to dismiss defendant's fraud counterclaim on the ground that no recently established evidence has been obtained upon which the defendant can predicate such a claim.

Defendant has countered with the argument that it is not estopped and that it has a legal right to contest the validity of the Kraly patent. Defendant also contends that plaintiff's argument of estoppel is based on a false premise and a total misunderstanding of the issues in the Florida litigation. Finally, defendant argues that its fraud allegation, if proven at trial, constitutes a viable basis for recovery and relief on its counterclaim and therefore cannot be dismissed for failure to state a claim.

Plaintiff's motion presents essentially three issues which this Court must resolve. Initially, the question is whether or not the prior dismissal with prejudice and the related settlement agreement estop National Distillers from raising the issue of invalidity in view of the rationale of Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). If the *Lear* rationale is applicable, the second question is, does it apply retroactively? Third, does the defendant's counterclaim fail to state a cause of action upon which relief can be granted?

I.

It is a basic tenet of American jurisprudence that settlements are favored by the courts and that the terms contained therein are binding upon the parties. In those instances where a settlement evidences a prior agreement not to compete or not to contest, such settlement constitutes, in effect, a covenant not to sue; and if one of the parties thereto or a successor in interest later attempts to do what has been formally agreed would not be done, the settlement ordinarily precludes him from so doing. See, Nashville, Chattanooga & St. Louis Ry. Co. v. United States, 113 U.S. 261, 5

S.Ct. 460, 28 L.Ed. 971 (1885); Brunswick Corporation v. Chrysler Corporation, 408 F.2d 335 (7 Cir. 1969), and Warner v. Tennessee Products Corporation, 57 F.2d 642 (6 Cir. 1932). It is also true that, as a general proposition, public policy militates against upsetting judicial settlements. Implicit here, of course, is the desirability of certainty in legal relations. See, Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1947).

■ Because of the *Lear* decision, however, it is now encumbent upon us to determine which of two competing public policies is controlling. Notwithstanding the agreement not to contest the validity of the Kraly patent, which was part of the consideration for the settlement, we conclude that the rationale of *Lear* is applicable and compels the conclusion that defendant is not estopped from raising the defense of invalidity. *Lear* involved a suit for royalties allegedly due and owing by a patent licensee. In abandoning the doctrine of licensee-estoppel, the Supreme Court reasoned that the federal law of patents, which requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent, should override the law of contracts. While the instant case is factually distinguishable from *Lear*, the logic of *Lear*, i.e., that the public interest in the elimination of specious patents overrides any doctrine of contract law which seeks to balance the claim of a promissor and promisee, remains applicable. That *Lear* encompasses the instant case is, however, clear from Justice Harlan's opinion. He said:

* * * Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. * * * The parties' contract, however, is no more controlling * * * than is the State's doctrine of estoppel, which is also rooted in contract principles.

The decisive question is whether overriding federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts. *Supra*, 395 U.S. at 671, 673, 89 S.Ct. at 1911, 1912.

■ A consideration of Lear leads inevitably to the conclusion that the interest of the public is better served if the validity of patents is ventilated and that to enforce a contractual provision which would prohibit such ventilation undermines the strong federal policy favoring the full and free use of ideas in the public domain. A licensee, who takes his license and agrees not to contest the validity thereof as a condition precedent to a settlement of a lawsuit, cannot, when juxtaposed with the language and the philosophical basis of *Lear* be differentiated from a licensee whose license was obtained through negotiation prior to the institution of any lawsuit. This reasoning is especially appropriate to a license settlement agreement which was effectuated prior to the *Lear* decision. Moreover, the fact that a "no contest" clause was added as a condition of such a license is not evidence of a significant concession by the licensee since it merely represents an agreement not to do something which was already prohibited by the then applicable patent law doctrine of license estoppel.

This conclusion, while apparently one of first impression at the federal court level, has been advocated and adopted in a recent New York Supreme Court decision. See, Rialto Products, Inc. v. Rayex Corp., 166 U.S.P.Q. 222 (Decided June 30, 1970). In *Rialto*, the New York Supreme Court held that a licensee, who was sued for royalties, was not barred from asserting the invalidity of the licensed patent, even though the license arose out of a settlement of a prior infringement action where part of the consideration for the settlement of the lawsuit was the patentee's forbearance from prosecuting the action and the licensee's admission in the settle-

ment agreement that the patent was valid.

Rialto, like plaintiff Mary Kraly, vigorously contended that the defendant should be barred from asserting patent invalidity since the agreement in which the licensee acknowledged the patent's validity arose out of the federal court settlement. The New York court, however, applied the *Lear* rationale and found that the equities of the licensor did not weigh very heavily when balanced against the important public interest in permitting full and free competition in the use of ideas in the public domain.

 As discussed in both the *Lear* and *Rialto* decisions, avoidance by settlement of a potential attack on a patent's validity is undesirable in view of the public policy favoring the free flow of ideas throughout the community and indefensible because of the strong possibility that a potential tester, while having a good claim, might opt against litigation or terminate an already commenced action, if he could secure an attractive licensing agreement. Moreover, enforcement of such an agreement may give to the licensor additional economic incentive to devise every conceivable dilatory tactic in an effort to postpone the day of final judicial reckoning. In this connection, the Supreme Court said in *Lear*, 395 U.S. page 673, 89 S.Ct. page 1912:

> We can perceive no reason to encourage dilatory court tactics in this way. Moreover, the cost of prosecuting slow-moving trials and defending an inevitable appeal might well deter many licensees from attempting to prove patent invalidity in the courts.

In the instant case, the fact that the agreement not to contest the validity of the patent was incorporated in a settlement agreement is not significantly different from such an agreement in an original license, not the product of a law-

suit settlement agreement, but, instead, the product of negotiation. *Lear* suggests that the result would be the same in either case. That this conclusion is reached is aided by the fact that the defendant is one of those persons, if not the only one, with the interest and the funds to determine whether or not the Kraly patent is valid.[1]

 Having concluded that the *Lear* reasoning vitiates the force and effect of the covenant not to contest the validity of the patent which defendant's predecessor in interest entered into and that the public policy articulated by the Supreme Court permits assertion of the defense of invalidity, it remains to be determined whether or not *Lear* should be applied retroactively. The question of the retroactivity of *Lear* was considered by this Court earlier in this year in Skil Corp. v. Lucerne Products, Inc., 68 C 1290. In *Skil*, we discussed the merits of the contention that Standard Industries, Inc. v. Tigrett Industries, Inc., 397 U.S. 586, 90 S.Ct. 1310, 25 L.Ed.2d 590 (1970), precluded the retroactive application of *Lear*. We concluded that regardless of how *Standard Industries* was viewed it did not constitute a bar to a vacation of an order entered by this Court granting summary judgment because the defendant-licensee had contended prior to *Lear* that the patent was invalid and hence could not possibly have been deemed to have waived that defense.

That *Standard Industries* is of no precedential value is corroborated by *Lear* itself. Footnote 19, 395 U.S. at page 674, 89 S.Ct. at page 1913 strongly intimates retroactive application:

> Adkins suggests that any decision repudiating licensee estoppel as the general rule should not be retroactively applied to contracts concluded before such a decision is announced. Given the extent to which the estoppel prin-

---

1. Because we are not here faced with a post-*Lear* settlement and covenant not to contest validity, this Court need not pass upon the merits of such a clause.

Whether or not an anti-*Lear* covenant would be upheld is not before us and we therefore respectfully refrain from any consideration thereof.

ciple had been eroded by our prior decisions, we believe it clear that the patent owner—even before this decision—could not confidently rely upon the continuing vitality of the doctrine. Nor can we perceive that our decision today is likely to undermine any existing legitimate business relationships. *Moreover, the public's interest in the elimination of specious patents would be significantly prejudiced if the retroactive effect of today's decision were limited in any way.* [emphasis ours]

■ Because *Standard Industries,* a per curiam decision, contains no statement of general policy, and because of the importance of the public policy articulated in *Lear,* we hold that the defendant may assert the *Lear* defense in the instant case even though the agreement not to contest the validity of the patent predated *Lear.*

## II.

■ Plaintiff's second contention, that defendant is estopped by its defense in the Florida lawsuit, is likewise unpersuasive. Plaintiff urges that the same party cannot in one instance rely upon a licensing agreement to its advantage and then contest the basic validity of the patent involved in that agreement in another. Plaintiff's logic is faulty given the nature of the two lawsuits.

The lawsuit currently in progress in the Fifth Circuit is a mismarking case in which the defendant is accused of improperly marking certain crates as to patents applicable thereto. Defendant there contends that these markings are proper and are being made pursuant to a valid licensing agreement. Defendant does not thereby assert the validity of the licensed patent, but simply that it is not mismarking. Plaintiff, however, vehemently argues that to assume such a position estops defendant in this litigation because one cannot be licensed under an invalid patent. Implicit in any license, plaintiff claims, is the inference

that the party claiming to have a valid license is thereby asserting the validity of the patent upon which the license is based. Unfortunately for plaintiff that conclusion does not necessarily follow. The positions taken by defendant National Distillers are not mutually exclusive and to foreclose it from challenging the validity of the Kraly patent in this lawsuit on that ground would be unwarranted.

In the last analysis, what is involved is the public interest. *Lear* is now the law with which this Court must abide and every inventor, potential patent holder who may enter into a license agreement, or patent holder who has already entered into such an agreement, is open to a challenge to the validity of the patent.

## III.

■ Finally, plaintiff has moved to dismiss defendant's counterclaim contending that it fails to state any claim. Defendant has alleged, as the basis of its counterclaim, that plaintiff procured her patent by fraud. In support of its position, the allegation has been made that evidence of fraud now exists as a result of discovery in the Florida lawsuit. Plaintiff argues that because of the seriousness of the fraud allegation she has sought, on her own, to investigate the charge and has advised the court that no such evidence exists and that, therefore, the counterclaim must be dismissed.

Suffice it to say that if defendant can establish its claim at trial, then it will be entitled to appropriate relief. If plaintiff is correct and there is no such evidence, the counterclaim will fall. A dismissal of defendant's counterclaim at this time, however, would be improper because it is impossible to conclude that defendant has failed to state a cause, which, if proven, would entitle it to the relief sought. An appropriate order, not inconsistent with the foregoing, has heretofore entered.