Horace B. BROSE, Plaintiff-Appellant,

v.

SEARS, ROEBUCK AND COMPANY, Defendant-Appellee.

No. 29816.

United States Court of Appeals, Fifth Circuit.

Jan. 26, 1972.

Carl V. Wisner, Jr., Fort Lauderdale, Fla., John Cyril Malloy, Miami, Fla., for plaintiff-appellant.

Peter J. Winders, Tampa, Fla., G. Franklin Rothwell, Washington, D. C., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and GODBOLD, Circuit Judges.

JOHN R. BROWN, Chief Judge.

■ This appeal is taken by Brose from the Trial Court's dismissal, at the conclusion of the plaintiff's evidence, of a qui tam informer's suit alleging "mismarking" under 35 U.S.C.A. § 292.[1] The Trial Court found that Appellant failed to prove (i) falsity of the marking in issue, (ii) intent to deceive the public on the part of Sears, (iii) any marking by Sears, and (iv) that the marking was done to any "unpatented article."[2] Brose's failure to prove *any one* of the above elements would have proved fatal to his cause since the Act is penal in nature and must be strictly construed. Ansul Co. v. Uniroyal Inc., D.C.N.Y., 1969, 306 F.Supp. 541. In affirming the Trial Court's decision we limit our discussion to the critical element, stipulated by the parties to be decisive, of intent on the part of Sears to deceive the public by placing the marking on the product in issue.[3]

1. 35 U.S.C.A. § 292 provides:

"(a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, or sold by him, the name or any imitation of the name of the patentee, the patent number, or the words 'patent,' 'patentee,' or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made or sold by or with the consent of the patentee; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—

Shall be fined not more than $500 for every such offense.

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States. July 19, 1952, c. 950, § 1, 66 Stat. 814."

With some revision in the 1952 Code, this is based on former 35 U.S.C.A. § 50, R.S. § 4901. The penalty was increased from $100 to $500. See, Walker on Patents (Deller's Edition) 1937, ch. XX, 1791–1799. The Trial Court sat without a jury and upon motion of the Appellee dismissed the suit after hearing Appellant's evidence under F.R.Civ.P. 41(b), which provides, "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that under the facts and the law plaintiff has shown no right to relief."

That the Court did not treat it as a non-jury equivalent to a motion for instructed verdict testing legal sufficiency as a prima facie case, but rather disposed of it on credibility choices is shown by the Court's filing detailed findings of fact and conclusions of law in which he found facts, Rule 41(b). As any other fact findings these come here with Buckler and Shield of F.R.Civ.P. 52(a).

2. Brose also brought dependent complaints for misrepresentation under 15 U.S.C.A. § 1125 and under the Uniform Deceptive Trade Practices Act, Fla.Statutes, §§ 817.69–817.75, F.S.A. The parties stipulated that if the cause for "mismarking" under 35 U.S.C.A. § 292 failed, the other complaints would fail also. We do not here consider any issues other than those presented by the § 292 claim.

3. Without so deciding we think Sears cannot so blithely escape the charge that it "marked" the device. While actually

Probably no earthshaking discovery, the case involves what some contemporary Judges nostalgically recall as the simple tool used by young boys to insert rubber bands in a bicycle tire to close a puncture and then seal it with a tube of Never Leak. Now this great art is extended to tubeless automobile tires. Sears under its own label markets a tubeless tire repair kit which Egan (successor) manufactures and packages for it.

### Brose's Theory

The theory of Brose, shifting as it has been to meet the exigencies of the moment, can in the figure of the case, be quite deflated to almost flat proportions. The mismarking comes not from the fact that the kit bears the true legend "licensed under U.S. Patent [Kraly] 3,-095,342." Rather, it is because Egan (Sears) although licensed by Patentee Kraly under 3,095,342, does not in the kit make a device which "reads on" the claims of the cited patent. For the purposes of a § 292 suit this means that since the marketed device is not the one covered by the cited patent it is as though there was no patent at all and the marker (Sears through Egan) had put such a description on an admittedly unpatented article. Thus does he drag in by the back door notions—which were so baffling to the Trial Judge—of infringement, range of equivalents, invalidity and many other esoteric concepts of the world of patentese. To establish the crucial element of intent to deceive the public Brose, first, in the Trial Court urged that Sears' actions and the judgment in the Illinois suit (see discussion, *infra*) showed purposeful misrepresentation and, second, in this Court contends that the physical disparity between the device sold in the kit and that described in the patent claims is so gross that Sears had to know of this, and knowing this, deliberately intended to palm off the device as a patented one.

### Brose Not A Disinterested Private Attorney General

Although Brose is a person entitled to bring the informer's suit with the hope of astronomical awards which continue as every day Egan turns out for Sears thousands of these suspect packages[4] were he a stranger, the fact is that he is not. As is true in nearly all of the relatively few qui tam informer actions brought in the past one and a quarter century this one is used as a weapon in the arsenal of patent litigation—a factor which the Judge was entitled to regard with unusual significance not simply as a situation in which there was direct interest in the outcome of the apparently collateral patent controversy but in the prospect of high awards in the informer's suit itself, quite independent of the outcome of the underlying skirmish on patents.

For the record shows that Brose likewise had a patent[5] and was then pur-

manufactured for it by Egan (or successor) it was, as is so common in today's chain store retail merchandising, packed as a "Sears" product. And for a certainty, Sears cannot flee from whatever legal consequences attach to the judgment of dismissal in the Illinois litigation. It was a named party defendant and had demanded that Egan defend it which Egan did. Sears cannot disavow what Egan did in its name even though Sears was uninformed about what its indemnitor was doing.

4. In colloquy below Brose replied to the Judge's inquiry on the number of "offenses" (see note 1, *supra*) that "there are at least" 70,000 "of the Sears kits

involved." His share adds up to a tidy 17½ million dollars although on one basis or another—limiting it to each day or week or month—a Court would find a way to prevent such a result.

5. Brose had reissue patent No. 26,368. Subsequent to argument here, Judge Atkins of the Southern District of Florida held the Brose patent valid but not infringed by Sears. In Brose v. Sears, Roebuck and Co., 5 Cir., 1971, 455 F.2d 769, this Court affirmed on the issue of noninfringement. By its opinion of December 21, 1971, the Court vacated the District Court's holding of validity as not necessary to a disposition of a case. That opinion was withdrawn and in its

suing Sears (Egan) vigorously, but it turns out unsuccessfully in the adjacent Southern District of Florida by claiming that the kit infringed his patent.

### The Illinois Suit

Kraly, patentee in No. 3,095,342, in 1966 sued Egan (the manufacturer) and Sears in the Northern District of Illinois claiming infringement. Egan on demand of Sears defended for both. To the usual denials, special, general or out of ignorance, Sears formally denied validity (and hence infringement) of the patent for one or more or all of the reasons which the "antlike persistence of patent solicitors," Lyon v. Boh, S.D.N. Y., 1924, 1 F.2d 48, 50, could conjure up. Subsequently the parties settled the case by the payment of a fixed sum by Egan (Sears) and the execution of a non-exclusive license agreement to Egan. When the motion and agreed order of dismissal were submitted to Judge Will, with his characteristic independence he struck out the words "without prejudice" and substituted in his own hand "with prejudice." [6] The license agreement prescribed that the marking as used appear on the product manufactured by Egan.

### Estoppel by Pleading/Judgment

Although not pressed with quite the vigor below the recurring theme in E-flat minor is that Sears' actions and the judgment in the Illinois suit (see note 6, *supra*) commit Sears to a binding judicial determination that Kraly was invalid and hence Sears could not in good faith have passed the kit off on the public as made pursuant to the cited license.

 This rests on a hypercritical reading of the order and an argument which runs along this line. Since it is a dismissal "with prejudice" it is a judicial determination that the plaintiff (Kraly) cannot prevail, and that is so because the parties (and the Judge) thereby embrace the defendants' (Sears-Egan) defense of invalidity. Whatever other difficulties inherent in Brose, a non-party—non-privy to the Illinois suit, to raise this as res judicata or collateral estoppel, this misreads the order and its obvious purpose. It was a settlement, and so described. And it was a settlement of the plaintiff's (Kraly) claim and the defendants' (Egan and Sears) cross-claim. The "with prejudice" simply had the effect of preventing either party from ever asserting against the other the same claims or counterclaims.[7]

decision of January 25, 1972, the Court held it was unnecessary to review the Trial Court's determination that the patent was valid.

Brose and Kraly were fellow industrial associates and used the same patent solicitor to secure their respective patents.

6. The order of March 27, 1967 in 66–C–2016 provided:

ORDER .

Upon motion of plaintiff and defendants in the above entitled action, and it having been stipulated and agreed by and between the parties through their respective attorneys, as follows:

1. That United States Letters Patent 3,095,342 is owned by the plaintiff Mary S. Kraly;

2. That the parties having by agreement made full settlement of all claims by plaintiff against the defendants for infringement, and said party defendant Egan having taken a license under said Letters Patent, no damages, costs, attorneys fees, or other recovery be had in this cause by either plaintiff or defendants.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That this cause be dismissed with prejudice.

2. No damages, costs, attorneys' fees or other recovery be had in this cause by either plaintiff or defendants.

/s/ Hubert L. Will
United States District Judge
Dated: March 27, 1967.

7. Old cases neither die nor fade away, Bros. Inc. v. W. E. Grace Manufacturing Co., 5 Cir., 1965, 351 F.2d 208, 209, and certainly not patent cases. While the proceedings were going on in the Middle and Southern Districts of Florida (see note 5, *supra*) Kraly (successor) sued Egan (successor) for unpaid royalties and an accounting under the license agreement. On removal to the Federal

At most, the pleadings and judgment in the 1967 Illinois proceeding amounted only to an admission in the sense of action by Sears and Egan inconsistent with the current assertion. But it is only evidence, not conclusive, and the trier of the facts was entitled to disregard it as insignificant for a number of reasons, not the least of which was the plain language that all issues were compromised. Indeed, the settlement was made to avoid resolution of the contentions. The Judge, presiding over a busy Court to which more and more cases come each day, week, month and year, would hardly think the law's policy of encouraging settlements would be served by holding one party to a concession that the adversary's contention was sustained even without a trial.

### Was The Kit Within Kraly Patent

■ Before us Brose emphasizes that intent to deceive is "proved" by knowing that the kit did not embody any or all of the Kraly claims. That approach calls for two things. First, it must be established that from an operational mechanical sense the patent does not cover the kit. Presumably that could be done by a simple preponderance of the evidence (and a finding). Second, the differences are so plain that no one in good faith could think otherwise. It is at this point that the law—perhaps out of distaste for blood money suits —compels a positive showing. For here not only are objective physical facts involved. Here are questions of motive, purpose and attitudes.

■ We can assume that if a device claimed to be covered by license of a cited patent is so obviously not revealed by it as the patentese world would view it, the use of such a legend would be mismarking. See, American Needle and Novelty Co. v. Schulessler Knitting Mills, Inc., D.C.Ill., 1966, 258 F.Supp. 98, modified, 7 Cir., 1967, 379 F.2d 376. But where the device is within the specific field covered by the patent and uses materials and methods similar to the technical patent disclosures, the licensee's use in good faith reliance on the license is not to be transmuted into an evil purpose to deceive the public merely on proof and finding that for one or more or all of the reasons skilled patent advocates could think up, the embodiment in question does "not read on" or is not an "infringement" of the cited patent. See, London v. Everett H. Dunbar Corp., 1 Cir., 1910, 179 F. 506, 509; [8] Zuckerman v. Pilot, D.C.N.Y.1940, 71 F.Supp. 478, 479, 1 F.R.D. 130, 131. But this pre-

Court this again fell to the lot of Judge Will, presumably on his individual calendar for which he is a nation-wide roving ambassador and advocate. Egan raised the defense of validity—a defense which Judge Will in 1970 held could be asserted by reason of the intervening case of Lear v. Adkins, 1969, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610, despite the express covenant in the license that the licensee (Egan) could not challenge validity. Kraly v. National Distillers and Chemical Corporation, D.C.Ill., 1970, 319 F.Supp. 1349, 168 P.Q. 51.

Brose attempts to plug his leaking theory by asserting (as Kraly did before Judge Will) that Egan's (successor) contention of invalidity in the 1970 Illinois case was contradictory of its (and Sears') claim in that the kit was manufactured pursuant to the cited license—a fact which could only be true were the patent valid. As did Judge Will, we find this effort to press logic so far unpersuasive. Not the least reason is that an article could quite literally embody the crucial elements of the cited patent under the license and yet under Lear its licensee would be entitled to challenge validity because of overriding public interests.

8. "Of course, it does not follow, from the fact that the article was unpatented, that there was necessarily a purpose to deceive the public in marking it patented. The purpose to deceive the public is an essential element of the offense, and the burden is upon the plaintiff to establish this purpose as well as the fact that the article is unpatented. The statute does not extend to one who has an honest, though mistaken, belief that upon a proper construction of the patent it covers the article which he marks. The question of guilt does not depend upon such close or exact construction of the patent as is usual upon bills for infringement where the issue is as to the extent of a patentee's right under letters patent. * * * *"
London, supra, 179 F. at 509–510.

supposes that the private attorney general has established that the device is not within the patent. Only at that time does the good faith purpose or motive of the marker of a license to a cited patent come into question. Obviously, this is essentially a question of fact.

█ It is here that Brose fails completely. For the Court found as a fact that the "article [kit] is licensed under * * * Kraly" and reached the legal conclusion that the "accused product is in fact licensed by" Kraly. Since the contrary finding was essential as the first part of the intent to deceive element, the burden is heavy on Brose to override F.R.Civ.P. 52(a). For such "a determination can be disturbed, as clearly erroneous, only in rare instances." Filmon Process Corp. v. Spell-Right Corp., 1968, 131 U.S.App.D.C. 374, 404 F.2d 1351, 1356, 158 P.Q. 533.

█ All the record contained was testimony of Brose who, while mechanically skilled in the manipulation of the various competing types of tire repair kits, demonstrated only a difference in *products*. He did not attempt to describe how or in what manner the kit did not reflect significant elements of Kraly. Nor was his case helped any by the "expert" [9] whose views the Judge received as a matter of good judicial husbandship but which he then immediately rejected on credibility choices by stating " * * * it doesn't prove anything. It doesn't prove anything. It doesn't prove anything helpful to the case."

The case began with emphasis on the imperative of intent to deceive. It ended both on the absence of proof which compelled such a finding and a negative finding to the contrary. And so it ends here.

Affirmed.

9. The witness had been a draftsman, specification and claims scrivener for several patent solicitors over a 30-year period. He was not an engineer, patent counsel

or attorney. In effect the Judge held him qualified only to describe differences in the accused device and the drawings, etc. of Kraly.