ACCENT DESIGNS, INC. and Jesse Bands, Inc., Plaintiffs,

v.

JAN JEWELRY DESIGNS, INC. and Jan Brzozowski (an individual), Defendants.

No. 92 Civ. 0482 (RWS).

United States District Court, S.D.New York.

July 12, 1993.

Lackenbach Siegel Marzullo Aronson & Greenspan, P.C., Scarsdale, NY, for plain-

tiffs; Howard N. Aronson, Anita H. Grosz, of counsel.

Ladas & Parry, New York City, for defendants; Alan K. Roberts, Clifford J. Mass, of counsel.

SWEET, District Judge.

The Defendants, Jan Jewelry Designs, Inc. ("Jan") and Jan Brzozowski ("Brzozowski") (collectively, the "Defendants"), have moved for an order for the following relief: partial summary judgment in their favor and against the plaintiffs, Accent Designs, Inc. ("Accent") and Jesse Bands, Inc. ("Jesse") (collectively, the "Plaintiffs") pursuant to Rule 56, Fed. R.Civ.P.; sanctions against the Plaintiffs and their counsel pursuant to Rule 11, Fed.R.Civ. P.; the preclusion of certain evidence pursuant to Rule 1006, Fed.R.Evid.

The Plaintiffs have cross-moved for an order imposing sanctions against the Defendants and awarding the Plaintiffs costs, expenses, and attorney's fees pursuant to Rule 11, Fed.R.Civ.P., and 28 U.S.C. § 1927.

For the reasons set forth below, the Defendants' motion is granted in part and denied in part, and the Plaintiffs' cross-motion is denied.

## Parties

Accent is a corporation duly organized under the laws of the State of New York, having its principal place of business in New York, New York.

Jesse is a corporation duly organized under the laws of the State of New York, having its principal place of business in New York, New York.

Jan is a corporation duly organized under the laws of the State of New York, having its principal place of business in New York, New York.

Brzozowski is a natural person who is a citizen of the State of New York, residing and domiciled in New York, New York.

## Prior Proceedings

The Plaintiffs brought this action against the Defendants on January 22, 1992, and on May 27, 1992, they were granted leave to file an amended complaint ("Amended Com-

plaint"). The Amended Complaint was filed on May 28, 1992.

On January 22, 1992, by way of an Order to Show Cause, the Plaintiffs moved for expedited discovery pursuant to Rules 30, 33, and 34, Fed.R.Civ.P. The motion for expedited discovery was granted to both sides on January 23, 1992.

On March 11, 1992, again by way of an Order to Show Cause, the Plaintiffs moved for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P., enjoining the Defendants from harassing, charging, or threatening the Plaintiffs or any of their customers with infringement of the Defendant's patent, U.S. Patent No. 4,566,294 (the " '294 patent"), in connection with certain channel-set jewelry manufactured, contracted, offered for sale or sold by the Plaintiffs. A hearing on the Order to Show Cause was held on April 2, 1992 (the "Preliminary Injunction Hearing"), at which time this Court declined to issue the requested equitable relief on the ground that the Plaintiffs made no showing of irreparable injury.

The present motion was filed by the Defendants on December 17, 1992. Oral argument was heard on February 10, 1993, and the motion was considered submitted as of that date.

## Facts

This is a diversity action brought by the Plaintiffs for declaratory relief and damages as set forth in the six-count Amended Complaint. At the center of this action is the '294 Patent, which was filed with the U.S. Patent and Trademark Office (the "PTO") on February 2, 1984 and issued to Brzozowski on January 28, 1986 for a "Method of the Mounting of Gems and Resulting Product." The '294 Patent set forth a method of mounting gems in jewelry by employing a channel setting which is a V-shaped groove.

Accent, Jesse, and Jan are engaged in the business of designing, manufacturing, having manufactured, distributing, and selling jewelry. Brzozowski is the president of Jan and is the owner of the '294 Patent.

In 1989, Peter Kielpinski ("Kielpinski"), a low-level production employee, left Jan and formed a partnership with Christopher Slow-

insky ("Slowinsky") to form Laser Wedding Bands, Inc. ("Laser"). While employed at Jan, Kielpinski became aware of the '294 Patent held by Brzozowski. At the time Laser was formed, Kielpinski and Slowinsky decided to determine whether the product they intended to produce would infringe the '294 Patent. Laser sought the advice of counsel regarding the scope of the '294 Patent on channel-set jewelry constructed with a trapezoidal- or U-shaped groove. Laser's counsel determined that the proposed products would not infringe the '294 Patent and concluded that the '294 Patent was weak and could be invalidated. Laser relied upon this advice and began manufacturing channel-set jewelry using trapezoidal- and U-shaped grooves.

By the end of 1989, the partnership between Kielpinski and Slowinsky ended, and Kielpinski formed Jesse with three other individuals. On the basis of the advice of Laser's counsel, Jesse began producing channel-set jewelry with trapezoidal- and U-shaped grooves. Jesse also sought a second independent "validity and infringement" opinion regarding Brzozowski's '294 Patent. As a result of this second opinion and in an effort to avoid litigation, Jesse stopped production of jewelry using the trapezoidal-shaped groove.

Prior to the creation of Jesse, Accent, a Swiss-cutting jewelry manufacturer, was formed and operational. Using the business relationships and customers of Accent, Jesse began to sell its services. Jesse developed a clientele which included Feature Rings, Inc. ("Feature") and David Klein Mfg. Co. Inc. ("Klein")

In or prior to March 1991, Brzozowski saw a catalog in which Klein used photographs of the rings having the Defendants' patented V-shaped groove sometime after Klein had stopped purchasing rings from Jan. The Defendants requested that their counsel prepare a cease-and-desist letter, which the Defendants sent to Klein on or about March 15, 1991, advising it of the Defendants' rights in the '294 Patent and the apparent infringement of that patent by certain products Klein was offering for sale.

Upon receiving the cease-and-desist letter from Jan, Klein contacted Jesse and expressed concern about the possibility of a being made a party to legal action by Jan. The Plaintiffs contend that, as a result of this concern, Klein curtailed the sales of a substantial portion of its product which was being manufactured by Jesse.

In or about February 1991, Brzozowski saw rings with V-shaped grooves being sold by Wright & Lato ("Wright") at a trade show. Wright had not bought these rings from the Defendants. On or about March 22, 1991, as the Defendants had previously done with Klein, they sent a letter to Wright advising it of the Defendants' rights in the '294 Patent. According to the Plaintiffs, the results of this letter were also similar; Jesse lost a substantial portion of Wright's business.

On or about September 12, 1991, the Defendants sent a similar letter to Leo Ingwer, Co. ("Ingwer"), which, the Plaintiffs assert, had a similar detrimental impact on the business relationship between Ingwer and Jesse.

Beginning prior to 1991, Brzozowski designed and Jan sold to Feature Rings, Inc. ("Feature") different styles of rings consisting of gemstones mounted in and forming parts of different artistic settings. At one point, Feature stopped buying a number of these styles from Jan and became a major customer of Jesse. Feature was informed orally by Jan that Jesse was infringing the '294 Patent, and in the Plaintiffs' view, these representations caused Feature to stop doing business with Jan.

The Plaintiffs allege that Jesse lost additional business as a result of Jan's representations to actual and potential customers that it was suing Jesse. In response to these representations, Jesse contends that business from Kayes Merchandise Mart and Faculty Enterprises was diminished or lost.

In anticipation of the National Manufacturers, Jewelers, and Silversmiths of America Trade Show (the "1992 Trade Show"), scheduled for March 15, 1992, the Plaintiffs sought expedited discovery to facilitate their preparations for a motion for a preliminary injunction. As was noted above, expedited discov-

ery was granted to both parties to eliminate the possibility of prejudicing the Defendants. Several depositions had been conducted by the end of February, and by the second week of March, the Plaintiffs had prepared the preliminary injunction motion. However, due to the short period of time prior to the 1992 Trade Show, the aforementioned Order to Show Cause was sought, and out of concerns of fairness to both parties, the hearing was scheduled for and held on April 2, 1992.

During the Preliminary Injunction Hearing, Philip Perlmutter, an officer and stockholder of both Accent and Jesse, testified regarding the structure of the products made by the Plaintiffs. The preliminary relief sought was confined to jewelry having the U-shaped groove, which was the shape of the channel purported used in 98% of the Plaintiffs' products. The remainder of the channel-set jewelry had grooves of various shapes, including a trapezoidal-shaped groove which was constructed into approximately 1,000 to 2,000 out of some 15,000 rings.

After a day of testimony at the Preliminary Injunction Hearing, the preliminary injunction motion was denied on the ground that the Plaintiffs failed to demonstrate that they would suffer irreparable harm if the preliminary relief were not granted. This Court concluded:

> There has been no quantification of any damages. Indeed, there hasn't been any evidence presented ... in a probative fashion that these letters have produced a reason in the marketplace to harm the plaintiff, and indeed, even if such a reaction could be established, the degree of irreparability certainly hasn't been established.

Prelim.Inj.Hr'g Tr. at 192.

## Discussion

### I. The Defendants' Motion For Partial Summary Judgment Is Granted

#### A. Rule 56 Standards for Summary Judgment

The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991).

The Second Circuit has unambiguously defined the role of the district court in deciding Rule 56 motions:

> The district court's role ... requires the court not to resolve disputed issues of fact itself, but rather to see if there are issues of fact to be resolved by the factfinder at trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). That is to say, when examining the record before it to see if there are any genuine issues of material fact, the court's focus is on issue-finding, not on issue-resolution. In making its assessment, the trial court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See United States v. Diebold,* 369 U.S. 654, 655 [82 S.Ct. 993, 993, 8 L.Ed.2d 176] (1962) (per curiam).

*Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993).

The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–

84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

■ When a motion for summary judgment is made and the nonmoving party will bear the burden of proof at trial, "Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991). However, if the moving party is still entitled to judgment as a matter of law after all the facts alleged by the nonmoving party are resolved in his favor as true, then any remaining factual disputes are neither "genuine" nor "material" and will not prevent the court from granting the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("a material fact is 'genuine' ... if the evidence is such that a reasonably jury could return a verdict for the nonmoving party"). Thus, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Finally, the court must look to the substantive law to determine which facts are "material," to wit, disputed facts that might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. It follows, then, that "[e]ntry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).

## B. *The Plaintiffs' Complaint*

### 1. *Count II: Unfair Competition*

■ The gravamen of the Plaintiffs' claim for unfair competition as set forth in Count II of the Amended Complaint is that the Defendants made threats against and

unfair representations to the Plaintiffs' actual or potential customers which were based on erroneous allegations that the Plaintiffs were infringing the '294 Patent. In establishing this claim, the Plaintiffs have the burden of showing that the Defendants made the allegations of infringement without having a reasonable belief that there was in fact an infringement. *See, e.g., Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314 (2d Cir. 1950); *Brown v. Myerberg*, 314 F.Supp. 939, 943 (S.D.N.Y.1970) (finding "sufficient likelihood of infringement" to justify sending notices). However, on the present record, even when all doubts are resolved in the Plaintiffs' favor, the evidence does not support the conclusion that the Defendants made the allegations of infringement without reasonable cause.

The Plaintiffs base this claim on the Defendants' dealings with four customers, Klein, Ingwer, Wright, and Feature. However, the Defendants acted reasonably with regard to each of these customers. A review of the letters the Defendants sent to Klein, Ingwer, and Wright and of the context in which they were sent indicates that there was a sufficient likelihood of infringement to justify the Defendants' actions. The record shows that the Defendants sent these letters to Klein and Ingwer only after seeing rings in their respective catalogs that appeared to be designed with an infringing V-shaped groove, and that the letter to Wright was sent only after the Defendants inspected one of its ring, which had an apparently infringing V-shaped groove, at a trade show.

The record also shows that the Defendants did not advise Feature that the Plaintiffs were infringing its patent. Rather, Feature advised Brzozowski that the Plaintiffs had sold certain rings with V-shaped grooves to Feature, and Brzozowski indicated to Feature that he believed these rings infringed the '294 Patent.

The Plaintiffs' proofs on this issue cannot withstand the Defendants' Rule 56 motion. The Plaintiffs have stated that they do not know and have been unable to ascertain whether their customers were, in fact, selling apparently infringing rings during the relevant time period. The Plaintiffs have admit-

ted to selling rings having a trapezoidal-shaped groove which the Plaintiffs' expert found to be "a closer question on the issue of infringement" than rings having U-shaped grooves, Prelim.Inj.Hr'g Tr. at 159, and the Plaintiffs have not denied selling these allegedly infringing rings to the customers in question during the relevant time period. Therefore, the Plaintiffs do not have sufficient evidence to establish that the Defendants' letters were sent without the requisite reasonable cause.

■ The Plaintiffs' claim for unfair competition is also grounded on the allegation that invoices bearing a patent legend (the "Legend") which the Defendants sent to the Defendants' own customers, between March 12, 1991 and March 25, 1992, gives rise to a cause of action. The Legend states:

### THIS PRODUCT IS PRODUCED UNDER US PATENT # 4,566,294.

The Plaintiffs assert that this Legend constitutes an unfair practice as a false representation because it misleadingly appears to imply that any and all products listed on a given invoice are produced under the '294 Patent, not that the '294 Patent applies only to those products actually manufactured with the V-shaped groove.

■ Pursuant to the applicable common law principles governing claims of unfair competition, such a claim is not actionable absent proof that any such allegedly false claims caused actual damage to the plaintiff. *See Construction Technology, Inc. v. Lockformer Co.*, 704 F.Supp. 1212, 1217 (S.D.N.Y. 1989). In the matter at hand, the Plaintiff have been unable to offer the requisite proofs that would withstand this Rule 56 motion by establishing that these acts of allegedly unfair competition and false representation caused them to sustain damages. On the one hand, the invoices in question were not sent to Klein, Ingwer, or Wright, and on the other, with respect to Feature or any other customer common to both the Plaintiffs and the Defendants, there is no evidence to show

a causal connection between the invoices and any alleged loss of sales by the Plaintiffs.

According to the Plaintiffs, Feature wrote to them explaining the reasons it was going to stop buying certain products from them, but in doing so, Feature made no reference to the Legend on the Defendants' invoices. There is nothing on this record to support the conclusion that the reasons Feature gave in its letter to the Plaintiffs were not Feature's actual reasons for discontinuing those transactions with the Plaintiffs.

Furthermore, because the Plaintiffs claim they do not know what styles of rings Feature stopped purchasing from them or whether any of those styles had a U- or trapezoidal-shaped groove, the Plaintiffs are unable to exclude the possibility that their own alleged infringement of the '294 Patent was the cause for any decline in their sales.

This Court denied the Plaintiffs' motion for a preliminary injunction on the ground that they had failed to offer either any quantification of damages or proof that the letters in question adversely affected the Plaintiffs in the marketplace. The Plaintiffs have offered no additional evidence on this issue on the record of this motion. Therefore, summary judgment must be granted as to Count II of the Amended Complaint because there is a total absence of evidence to support the Plaintiffs' claim for unfair competition, *see Bay*, 936 F.2d at 116, and no reasonable jury could return a verdict on this claim for the Plaintiffs, *see Coach Leatherware*, 933 F.2d at 167.

### 2. *Count III: Tortious Interference With Contracts*

■ To establish a cause of action for tortious interference with contract, the plaintiff must show that the defendant had knowledge of an existing contract between the plaintiff and its customer, and that the defendant intentionally, knowingly, and without reasonable justification induced the customer to breach the contract thereby damaging the plaintiff. *See Health–Chem. Corp. v. Baker*, 915 F.2d 805, 809 (2d Cir.1990). To state a cause of action, the interference must be intentional and not incidental to some other lawful purpose. *See id.*

■ The allegations set forth in Count III of the Amended Complaint are based on the same facts relied on in Count II with the additional allegations that some of the Plaintiffs' customers have cancelled contracts with them and that some potential customers have refused to enter into contracts with the Plaintiffs because of the representations of infringement made by the Defendants. However, the Plaintiffs have failed to offer any support for their claim that the Defendants acted in a manner other than was consistent with the legally sound motive of wanting to stop any infringement of the presumptively valid patent.

Therefore, summary judgment must be granted as to Count III of the Amended Complaint for the reasons set forth in granting the motion as to Count II.

### 3. Count IV: Patent Invalidity And Inequitable Conduct

Count IV contains two distinct sets of allegations: the '294 Patent is invalid, first, because Brzozowski did not make any invention or discovery within the meaning of the Patent statute, and second, because Brzozowski procured the '294 Patent through inequitable conduct by allegedly concealing and misrepresenting certain facts to the PTO during the prosecution of the application which eventually matured into the '294 Patent. This Count repeats in greater detail the brief statement of exactly the same allegations set forth in Count I:

> The '294 Patent is invalid and/or unenforceable due at least in part to the existence of relevant or applicable prior art not known to the Examiner and due to inequitable conduct on behalf of Brzozowski.

Am.Compl. at ¶ 34.

The Court will defer consideration of the first set of allegations set forth in Count IV, regarding the issue of prior art and prior sales of Brzozowski's alleged invention, to the time at which the claims set forth in Count I are brought before the Court. Thus only those allegations of inequitable conduct as set forth in Count IV are considered on the present motion.

The specific act of misconduct alleged by the Plaintiffs is that Brzozowski failed to bring pertinent information and prior art known to him to the attention of the Patent Examiner. This stock claim, which appears in the pleadings of virtually every major patent action, has taken on the dimensions of "an absolute plague." *Burlington Indus. Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed.Cir.1988) (admonishing patent litigants that "an unsupported charge of 'inequitable conduct in the Patent Office' is a negative contribution to the rightful administration of justice.").

■ Inequitable conduct by a party procuring a patent from the PTO renders a patent unenforceable and constitutes a defense against a charge of infringement. *See J.P. Stevens & Co. v. Lex Tex. Ltd.*, 747 F.2d 1553, 1559–61 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985).

■ The criteria a plaintiff must satisfy to establish such a claim for fraud on the PTO include the presentation of clear and convincing evidence of an intentional misrepresentation or withholding of a material fact from the PTO. *See Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed.Cir. 1988); *J.P. Stevens*, 747 F.2d at 1559–60. It is simply not sufficient to allege inequitable conduct to state an actionable claim against a defendant. As the Federal Circuit has noted:

> "Inequitable conduct" is not, or should not be, a magic incantation to be asserted against every patentee. Nor is that allegation established upon a mere showing that art or information having some degree of materiality was not disclosed. To be guilty of inequitable conduct, one must have intended to act inequitably. Thus one who alleges a "failure to disclose" form of inequitable conduct must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the application to disclose the art or information resulting from an intent to mislead the PTO.

*FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed.Cir.1987) (footnote omitted); *see*

*also N.V. Akzo, Aramide Maatschappij v. E.I. du Pont de Nemours & Co.*, 810 F.2d 1148, 1153 (Fed.Cir.1987); *Allen Archery, Inc. v. Browning Mfg. Co.*, 819 F.2d 1087, 1094 (Fed.Cir.1987).

On the record of this motion, the Plaintiffs have failed to offer anything more than mere assertions regarding Brzozowski's inequitable conduct before the PTO. The Plaintiffs contend that these allegations are supported by Perlmutter's following statement:

> I was told by a principal of AuTech[,] Inc. that as soon as we served the lawsuit, one of the first things done ... by Defendants and *defense counsel* personally, was to contact the principals of AuTech, Inc. (who were formerly with Advanced Ring Manufacturers, Inc., hereinafter "Advanced") and ask about some rings Jan Brzozowski had sold to Advanced in 1980 and some other rings created and sold by Advanced. Defendants and their attorneys were obviously interested in the shape of the groove in the channel-set rings of rings bearing style nos. GB42, LB42 and 76/76....

> From documents produced by Defendants, although incomplete, we know that defense counsel had claimed at least as early as August 1, 1989, that U.S.A. Jewelry infringed Defendants' Patent.

> However, immediately after the attorney for U.S.A. Jewelry sent defense counsel catalog pages from a June 1, 1979 Advanced catalog showing style nos. GB42, LB42 and 76/76, Defendants ceased its infringement claims and communications ended. It was these very pages sent by the attorney of. U.S.A. Jewelry to defense counsel that was [sic] the focus of Defendants frantic call to AuTech in January, 1992 after Defendants were sued.

Perlmutter Decl. at ¶¶ 47–49.

When read in the light most favorable to the Plaintiffs, the Plaintiffs' allegations support the conclusion that on August 1, 1989 the Defendants became interested in certain rings advertised in a 1979 catalog. This says nothing substantive about the knowledge chargeable to Brzozowski at the time he applied for the '294 Patent. Noticeably absent from the Plaintiffs pleadings is any specific statement that ring styles GB42, LB42, and 76/76 were channel-set rings with a V-shaped grove. The Plaintiffs only offer innuendo based on hearsay arising from the Defendants' apparent interest in certain rings.

While these allegations ultimately may be relevant in determining the allegations of Count I of the Amended Complaint, they fail to constitute a showing of the requisite threshold degree of intent, *see KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573 (Fed.Cir.1985); *J.P. Stevens*, 747 F.2d at 1560, and are insufficient to sustain the allegations of inequitable conduct on the part of Brzozowski as set forth in Count IV in the face of the Defendants' Rule 56 motion. Therefore, summary judgment in granted in favor of the Defendants as to the allegations of inequitable conduct. Summary judgment is denied as to the allegations of prior art and prior sales insofar as they repeat the allegations on that issue which are set forth in Court I of the Amended Complaint.

### 4. *Count V: Defamation And Trade Libel*

The Plaintiffs cannot recover on their claim that the Defendants disparaged the Plaintiffs or the Plaintiffs' products through knowingly false accusations of infringement unless the accusations of infringement were false. *See El Greco Leather Prod. Co. v. Shoe World, Inc.*, 623 F.Supp. 1038, 1043–44 (E.D.N.Y.1985), *rev'd on other grounds*, 806 F.2d 392 (2d Cir.1986), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987) (holding that N.Y.Civ. Rights L. § 74 forbids liability for the publication of a "substantially accurate" report of any judicial proceeding, and this provision applies to an action for product disparagement). Moreover, under the law of New York, the burden is on the Plaintiffs to establish that any allegedly defamatory statement is "of and concerning" them. *See Fetler v. Houghton Mifflin Co.*, 364 F.2d 650, 653 (2d Cir.1966). Finally, the Plaintiffs must plead and prove actual damages as a result of any alleged disparagement. *See Construction Technology*, 704 F.Supp. at 1217–18.

In the matter at hand, even when all doubts are resolved in the Plaintiffs' favor, a reasonable jury could not find that the allegations regarding infringement made by the Defendants were knowingly false. The Plaintiffs do not claim to know whether any of the customers to whom the Defendants issued the alleged threats of litigation did or did not infringe.

Furthermore, the Plaintiffs are unable to satisfy the requirement of establishing that any allegations or representations made by the Defendants to their customers referred to the Plaintiffs. The letters of which the Plaintiffs complain were sent to customers who were selling apparently infringing V- and trapezoidal-shaped rings, and they make no reference to the Plaintiffs. Accordingly, absent a showing that the Defendants tied the Plaintiffs to the infringements, the customers receiving the letters would only consider the letters to refer to the Plaintiffs if the Plaintiffs had sold these customers the infringing rings or had otherwise been involved in their manufacture.

Finally, the Plaintiffs have neither pled nor can they prove special damages. Given the absence of specific records regarding the specific groove shapes of the rings manufactured and sold by the Plaintiffs, which the Plaintiffs freely admit, and the lack of any evidentiary support for the claim that potential customers would have dealt with them but for any alleged false statements made by the Defendants, the Plaintiffs cannot make a showing sufficient to establish the existence of any of the essential elements of the claim set forth in Count V of the Amended Complaint. Therefore, summary judgment against that claim must be granted.

### 5. *Count VI: False Marking*

In Count VI of the Amended Complaint, the Plaintiffs seek to recover damages pursuant to 35 U.S.C. § 292(a) for alleged false patent markings on the basis of the Defendants use of the Legend on invoices, from March 12, 1991 to, at least, March 25, 1992, which listed products other than those manufactured under the '294 Patent.

35 U.S.C. § 292(a) states *inter alia* that: Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public ... shall be fined not more than $500 for every such offense.

In order to trigger the fining mechanism of this statute in the present context the Plaintiffs must establish two elements: first, that invoices distributed to the Defendants' customers constitute a form of advertising medium which falls within the meaning of the statute,[1] *see Sadler–Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F.Supp. 1287, 1296 (N.D.Ohio 1991); and second, that the Defendants intended to deceive the public by printing the Legend on the invoices, *see Arcadia Mach. & Tool, Inc. v. Sturm, Ruger & Co.*, 786 F.2d 1124 (Fed.Cir.1986); *Intra Corp. v. Hamar Laser Instruments, Inc.*, 662 F.Supp. 1420, 1442 (E.D.Mich.1987), *aff'd*, 862 F.2d 320 (Fed.Cir.1988); *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989). Further, the evaluation of the Plaintiffs' proofs on these elements is necessarily constrained by the fact that, because the statute is penal in nature, it must be strictly construed. *See Brose v. Sears, Roebuck & Co.*, 455 F.2d 763, 765 (5th Cir.1972); *Solomon v. Greco*, 1990 WL 152562, at *10 fn. 1, 1990 U.S.Dist. LEXIS 13344, at *10–*17, U.S.P.Q.2d 1917 (E.D.N.Y. Oct. 2, 1990).

### (a) *"Uses In Advertising"*

The Defendants contend that, when strictly construed, the phrase "uses in advertising," as employed in § 292, does not cover invoices. If every word and clause in the statute is to be given effect, the expression "uses in advertising" cannot refer to any and all documents by which the word "patent" is brought to the attention of the public; it can only refer to use of the word "patent" in publications which are designed to promote the allegedly unpatented product, namely,

---

1. The Plaintiffs acknowledge that the Defendants have not marked the word "patent" on any un-

patented article.

advertisements. Thus the phrase "uses in advertising" limits the kinds of the documents covered by the statute. Any other construction would render the words "uses in advertising" surplusage.

■ The Defendants conclude that, because the Plaintiffs only accuse them of using words referring to the patent on invoices, which, by definition, are designed to provide an accounting of costs, *not* to promote a product, they cannot establish an element essential to their false marking cause of action, namely, use of false marking in advertising.

The Defendants' reading of the statute, however, gives a meaning to the phrase "use in advertising" that is arbitrarily narrow, even within the bounds of a strict construction. The act of advertising informs or gives notice to the public. In this case, the public was a specifically targeted class, to wit, the Defendants' customers who were also the Plaintiffs' potential or actual customers.

In *Lase Co. v. Wein Prod., Inc.*, 357 F.Supp. 210 (N.D.Ill.1973), the defendant sent a letter to various customers of the Plaintiff under the heading "Directive to Distributors," in which the distributors were informed that certain products they were purchasing from the Plaintiff were infringing the Defendant's patents. However, at the time the letters were sent, the defendant held no patents and did not have any patent applications pending. Like the Defendants in the present action, the defendant in *Lase* asserted that the letters did not constitute a "use in advertising" within the meaning of § 292, but the district court held otherwise, noting that:

> It is well settled that Section 292 was intended to protect a patentee against the fraudulent use of his name or device and to prevent, for the purpose of deceiving the public, the use in advertising in connection with any article, words imparting that an application for patent had been made when no application had been made or if made, is not pending.

357 F.Supp. at 213 (citing *Brose*, 455 F.2d at 763; *Calderwood v. Mansfield*, 71 F.Supp. 480 (D.C.Cal.1947); *Oliphant v. Salem*

*Flouring Mills Co.*, Fed.Ca. No. 10,486 (D.C.Or.1878)).

Similarly, the Defendants' invoices bearing the Legend constitute a "use in advertising" within the meaning of § 292. When competing manufacturers share customers, invoices serve the function of advertising by targeting a specific market, trade, or class of customers. This reading of § 292 is consistent with its purpose of protecting not only patentees but also other members of the public who trade in unpatented goods from false representations regarding the status of a product and to prevent false markings from improperly discouraging competition in the marketplace. *See* 5 **D. Chisum, Patents** § 20.03[7] (1992).

**(b) *Intent To Deceive***

■ In light of the conclusion that the Defendants' use of the Legend on invoices constituted a "use in advertising" pursuant to § 292, it remains to be determined whether the Plaintiffs have made the requisite threshold showing that the Defendants intended to deceive the public by printing the Legend on the invoices.

The Plaintiffs contend that the timing of the inclusion of the Legend on the Defendants' invoices is significant because it coincides with the Defendants mailing the cease-and-desist letters to the Plaintiffs' customers. According to the Plaintiffs, the inclusion of the Legend was part of the Defendants' intentional strategy to intimidate the Plaintiffs' customers from no longer doing business with them.

The Defendants respond that the use of the Legend-bearing invoices is insignificant because "only a small percentage of cases were invoices ... which did *not* include product covered by the patented method," and these invoices were knowingly generated to avoid the "headache" of creating separate invoices to distinguish those products manufactured under the '294 Patent from those not under it. Brzozowski Decl. at ¶ 16. This response fails to defeat the Plaintiffs' assertion that the Defendants had the requisite intent to deceive to trigger § 292.

When all doubts are resolved in favor of the Plaintiffs, a reasonable jury could find

that the Defendants' inclusion of the Legend on their invoices constituted advertising for the purposes of § 292 and that the Defendants intentionally included the Legend on their invoices for the purposes of unfairly competing for business involving the sale of products not covered by the '294 Patent and to give the misleading impression that the Defendants' products are unique and not legally available through competitors such as the Plaintiffs. Therefore, the allegations of Count VI are sufficient to withstand the Defendants' Rule 56 motion.

## II. The Defendants' Motion To Preclude Certain Evidence Is Denied

■ Rule 1006, Fed.R.Evid., governs the introduction of summaries and calculations from voluminous record. The Rule provides as follows:

### Summaries

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

The Defendants contend that this Rule is applicable to Perlmutter's estimate that 98% of the Plaintiffs' product was constructed using a U-shaped, not a trapezoidal-shaped, groove, and all testimony relating to such a claim, because documentation upon which this calculation is based was destroyed or not maintained by the Plaintiffs.

In support of their contention that the Plaintiffs' testimony on this issue should be precluded under Rule 1006, the Defendants cite *Square Liner 360°, Inc. v. Chisum*, 691 F.2d 362 (8th Cir.1982). In that patent infringement action, the Eighth Circuit held that the district court erred in admitting testimony of a witness which was based on summaries and calculations when those summaries and calculations were produced only two hours before the witness took the stand and neither the original records nor duplicates thereof were made available to the

opposing party before the witness testified. *Id.* at 376–77.

However, the applicability of Rule 1006 and *Square Liner* turns on whether the documents underlying the testimony in question did or do, in fact, exist. The Defendants simply assert that the underlying documents were destroyed or not maintained by the Plaintiffs:

By destroying purchase orders and/or by failing to maintain adequate records, plaintiffs have prejudiced defendants by effectively precluding defendants from ascertaining the full extent of defendants' damages as a result of plaintiffs' patent infringement. Under these circumstances, it would be inequitable and unreasonable to allow plaintiffs to rely on testimony relating to such documentation to prove their case.

Dfs.' Br. at 16. The Defendants fail to offer any proof that such underlying documents did exist and either were destroyed or not maintained by the Plaintiffs.

In response, Jesse contends that, as a service business which performs contract production of channel-set jewelry, it does not maintain records of the engineering choices it uses in each job. The only records which are created for a particular job are invoices reflecting the amount of money billed.

Jesse describes the usual procedures it employs in filling orders as follows: Jesse receives an envelope containing the gems and blanks (sometimes the blanks are received separately from the blank supplier) as well as brief instructions given orally or written on the envelope. The production is commenced, the product prepared, and then an invoice is issued to the customer which is sent to the customer along with the package or envelope which was originally received and now contains the finished product.

As a result of this procedure, the Plaintiffs assert that it is impossible for anyone not involved in the actual manufacturing process to determine from their records alone which method or groove was used or created in the manufacturing of a particular product. The only source of such information is the recollection of those who worked on the job, and

Perlmutter's testimony at the Preliminary Injunction Hearing was not offered as proof of contents of documents which exist.

Perlmutter's calculations that approximately 98% of the products produced by Jesse were created using the U-shaped groove and that 2% or approximately 1,000 to 2,000 pieces were made with the trapezoidal-shaped groove were based on discussions he had with his partners, including Kielpinski, regarding the historic production methods of Jesse and on a review of the invoices.

Rule 1006 and the holding in *Square Liner* are inapposite: The nature of proof of the quantity of product manufactured with the trapezoidal-shaped groove is such that it must be established by testimonial evidence, not by writings. The relevant documents in the Plaintiffs' possession regarding their overall production quantities have been produced to the Defendants. This is not the sort of situation Rule 1006 was designed to address and its application here to preclude the Plaintiffs' testimony on this issue would unnecessarily prejudice the Plaintiffs. Therefore, the Defendants' motion to preclude this evidence is denied.

## IV. *Sanctions*

### A. *The Standards For Imposing Sanctions*

#### 1. *Rule 11*

The familiar prescriptions of Rule 11 require a federal court to impose sanctions against an attorney or party who signs a pleading, motion, or other paper, in violation of the requirement that the signer certifies

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P., Rule 11.

> In the event that this Rule is violated: the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Id.*

■ The Second Circuit has defined the standard to be applied in determining whether sanctions should be imposed for a violation of Rule 11:

> Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.... [A] showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... [W]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.

*Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985) ("*Eastway I* ") (footnote omitted). Therefore, in applying Rule 11, courts must assess whether an attorney's conduct was objectively reasonable at the time he or she signed the pleading, motion, or other paper. *See International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388 (2d Cir.), *cert. denied sub nom. Golub v. Hydra Offshore, Inc.,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Oliveri v. Thompson,* 803 F.2d 1265, 1274–75 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Quadrozzi v. City of New York,* 127 F.R.D. 63, 79 (S.D.N.Y.1989).

The substantive requirement imposed on an attorney or party by Rule 11 is that "[p]leadings, motions, and other papers must be justifiable *at the time they are signed.*" *United States v. International Bhd. of Teamsters,* 948 F.2d. 1338, 1344 (2d Cir.1991) (emphasis added). It follows, then, that a court must neither "allow hindsight to skew judgment" nor "countenance belated rationalizations concocted to conceal chicanery." *Id.*

Further, as this Court has previously noted, "improperly invoking subject matter jurisdiction of a federal district court is sanctionable under Rule 11." *Brignoli v. Balch, Hardy & Scheinman, Inc.,* 126 F.R.D. 462, 465 (S.D.N.Y.1989); *accord Official Publications, Inc. v. Kable News Co.,* 692 F.Supp. 239, 248 (S.D.N.Y.1988), *aff'd in part and rev'd in part,* 884 F.2d 664 (2d Cir.1989).

### 2. *Section 1927*

Section 1927 empowers a federal court to require an attorney "to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred" when that attorney has "unreasonably and vexatiously" multiplied the proceedings in an action. 28 U.S.C. § 1927. The purpose of this statute is "to deter unnecessary delays in litigation," and "an award made under § 1927 must be supported by a finding of bad faith." *Oliveri,* 803 F.2d at 1273.

■ Bad faith is the key element in the imposition of § 1927 sanctions, *see International Bhd.,* 948 F.2d at 1345; *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 23 (2d Cir.1990), and the Second Circuit has repeatedly held that:

an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.

*Oliveri,* 803 F.2d at 1273; *accord International Bhd.,* 948 F.2d at 1345.

■ In contrast to sanctions imposed under Rule 11, the sanctioning mechanism of § 1927 is directed exclusively at the offending attorney; § 1927 sanctions may not be imposed on clients. *See id.; Oliveri,* 803 F.2d at 1273. Additionally, while Rule 11 "does not impose a continuing obligation on the signer to correct or withdraw papers previously filed," *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1470 (2d Cir.1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989); *Oliveri,* 803 F.2d at 1274, § 1927 does impose just such a continuing obligation throughout the course of the litigation "to avoid dilatory tactics," *International Bhd.,* 948 F.2d at 1345.

### B. *The Defendants' Motion For Sanctions Is Denied*

■ The Defendants contend that the Plaintiffs violated the requirements of Rule 11 in three ways: first, by feigning urgency in their motions for tactical purposes; second, by alleging persistent threats of erroneous allegations of infringement without having adequate facts to form a reasonable belief that the allegations of infringement were either persistent or erroneous; and third, by intentionally misdirecting the Court's attention away from the Plaintiffs' trapezoidal-grooved rings. Each allegation is considered in turn.

### 1. *The Plaintiffs' Urgency*

The Plaintiffs brought their motion for expedited discovery by Order to Show Cause on two days' notice more than four months after the last letter of which the Plaintiffs complain was sent. In his supporting declaration, Perlmutter alleged that Jan had "*recently* communicated with customers of AC-CENT and JESSE," that "JAN is *continuing to write* to further customers," and that "customers of JESSE and ACCENT are *just now* refusing to use our services." Perlmutter Decl. ¶¶ 6, 7, 8 (emphasis added).

At his deposition, Perlmutter stated that the only letters sent by the Defendants of which he knew were the letters sent in March and September of 1991, and that the statement that the Plaintiffs' customers are "just now refusing to use our services," *id.* at ¶ 8, actually referred to one of the March 1991 letters. Moreover, in the Preliminary Injunction Hearing, Perlmutter acknowledged that he knew of only four letters sent

by the Defendants and had no idea of any letter sent by them after September 1991.

The Defendants now argue that the Plaintiffs' use of the terms and phrases "recently," "continuing to write," and "just now refusing" are contrived and misled the Court into acting on the Order to Show Cause to grant expedited discovery.

According to the Defendants, the Plaintiffs also feigned urgency with regard to their motion for a preliminary injunction by Order to Show Cause returnable March 13, 1992, on one day's notice to the Defendants.

The Plaintiffs respond that their legitimate concern about the National Manufacturers, Jewelers, and Silversmiths of America Trade Show (the "1992 Trade Show"), scheduled for March 15, 1992, motivated their request for expedited discovery to facilitate preparations for the motion for a preliminary injunction. The Plaintiffs also note that both parties were granted expedited discovery, and that the Defendants took full advantage of it.

Several depositions had been conducted by the end of February 1992, and by the second week of March, the Plaintiffs had prepared the preliminary injunction motion. However, due to the short period of time prior to the 1992 Trade Show, the aforementioned Order to Show Cause was requested. In light of the fact that the Defendants' lead counsel was not available on the originally scheduled return date, the hearing was adjourned to and ultimately held on April 2, 1992.

### 2. The Plaintiffs' Persistent Threats

The gravamen of both the Plaintiffs' motions for a preliminary injunction and for expedited discovery was that urgent relief was needed to prevent irreparable harm caused by the Defendants' persistent threats to the trade of the Plaintiffs by erroneous allegations of infringement. The Defendants contend that, although the Plaintiffs were required to ascertain that the Defendants' allegations of infringement were, in fact, erroneous before making such an assertion, the Plaintiffs failed to do so.

In filing their motions for expedited discovery and for preliminary injunction, the Plaintiffs relied on letters sent to various of the Plaintiffs' customers, and on an oral communication to Feature for the claim that the Defendants threatened lawsuits based on erroneous allegations of infringement. The Defendants object that in none of their letters to the Plaintiffs' customers did they refer to the Plaintiffs, and that the Plaintiffs do not know whether their customers were selling the allegedly infringing rings during the relevant time period.

The Defendants contend that these considerations trigger the sanctioning mechanism of Rule 11 because the Plaintiffs did not make adequate factual inquiries prior to filing their motions to determine whether any allegations of infringement made by the Defendants were in fact erroneous.

Furthermore, the Defendants contend that the Plaintiffs failed to make an adequate inquiry prior to filing their motions to support their allegations that any alleged "threats" made by the Defendants were persistent or ongoing.

The Plaintiffs respond that they had adequate facts to support the allegation of persistent and ongoing threats. Specifically, the fact that the Defendants had written cease-and-desist letters to the Plaintiffs' customers over a seven-month period did lead to the reasonable conclusion that the Defendants' efforts would be persistent and ongoing in pursuing the enforcement of the '294 Patent.

### 3. The Plaintiffs' Use Of Their Motions

The Defendants contend that the Plaintiffs had sufficient information to know that their customers were infringing the '294 Patent. At the Preliminary Injunction Hearing, Perlmutter acknowledged that the Plaintiffs sold channel-set rings which had a trapezoidal-shaped groove, and as was noted above, the Plaintiffs' expert conceded that such a design "would certainly be a closer question on the issue of infringement" than would be a U-shaped groove. Prelim.Inj.Hr'g Tr. at 159. In light of these statements, the Defendants assert that it was disingenuous of the Plaintiffs to divert the Court's attention away from the allegedly infringing design by basing their preliminary injunction motion on jewelry having a U-shaped design.

The Plaintiffs respond that they never denied producing a limited number of rings

using a trapezoidal-shaped groove and note that their expert neither analyzed the trapezoidal-shaped groove nor made a determination regarding whether it infringed the '294 Patent. This representation accurately reflects the understanding of the Court on this issue, and at no time did the Court feel that Plaintiffs' presentation at the Preliminary Injunction Hearing was designed to mislead the Court or divert the Court's attention from the quintessential issues underlying this action.

### 4. *The Plaintiffs' Actions Do Not Trigger The Sanctioning Mechanism of Rule 11*

On the record of the Defendants' motion, there is no indication that the Plaintiffs' conduct or that of their counsel was objectively unreasonable, *see International Shipping,* 875 F.2d at 391, or that the motions were unjustifiable at the time they were signed, *see International Bhd. of Teamsters,* 948 F.2d at 1344, to trigger the sanctioning mechanism of Rule 11. The Plaintiffs' sense of urgency in bringing both motions was reasonable in light of the immanent 1992 Trade Show. Their perception that the Defendants' actions regarding the enforcement of the '294 Patent were persistent and would be ongoing was justified by the Defendants' past behavior. Finally, the Plaintiffs' focus on jewelry having U-shaped, as opposed to the trapezoidal-shaped, groove did not mislead the Court into believing that the Plaintiffs did not manufacture jewelry with trapezoidal-shaped grooves. Therefore, Rule 11 sanctions will not be imposed against the Plaintiffs.

### C. *The Plaintiffs' Motion For Sanctions Is Denied*

The Plaintiffs cross-move for an order pursuant to Rule 11 and 28 U.S.C. § 1927 imposing sanctions, costs, expenses, and attorney's fees against the Defendants for "the continued vexatious and unreasonable conduct which is abusive, dilatory and based upon an obvious distortion and omission of material facts." Pls.' Br. at 2–3.

The Plaintiffs rely only on their responses to the various aspects of the Defendants' motion to support their claim that Rule 11

and § 1927 sanctions should be imposed against the Defendants. The present record is devoid of any specific analysis of either the nature and scope of these sanctioning mechanisms or the Defendants' conduct that has allegedly triggered these mechanisms in this matter. In light of this failure, the Plaintiffs' cross-motion must be denied.

### Conclusion

For the reasons set forth above, the Defendants' motion is granted in part and denied in part: Summary judgement is granted in favor of the Defendants as to Counts II, III, IV, and V of the Amended Complaint; the Defendant's motion for summary judgment as to Count VI of the Amended Complaint is denied; the Defendants' motion to preclude certain evidence is denied; and the Defendants' motion for the imposition of Rule 11 sanctions against the Plaintiffs is denied. The Plaintiffs' cross-motion for the imposition of Rule 11 and § 1927 sanctions against the Defendants also is denied.

It is so ordered.