Raymond BOYD, Plaintiff–Appellant,

v.

SCHILDKRAUT GIFTWARE CORPO-RATION and D & E Trading Corporation, Defendants–Appellees.

No. 919, Docket 88–7761.

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1991.

Decided June 10, 1991.

Philip M. French, Stamford, Conn. (Alfred H. Hemingway, Jr., New York City, on the brief), for plaintiff-appellant.

Marvin E. Frankel, New York City (Terry D. Weissman, Kramer, Levin, Nessen, Kamin & Frankel, New York City, on the brief), for defendants-appellees.

Before TIMBERS, NEWMAN and ALTIMARI, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Of the many issues on this appeal in a patent licensing case, the only one of substance is determination of the circumstances under which the mismarking of a product with an inapplicable patent number will estop the user from denying that his product uses the patent. Raymond Boyd appeals from the July 29, 1988, judgment of the District Court for the Southern District of New York (Mary Johnson Lowe, Judge) dismissing his claim for royalties claimed to be due under a 1978 patent license. We conclude that, under the circumstances of this case, the rejection of marking estoppel was correct, and we therefore affirm.

### Facts

Boyd invented a switch that turns on the lights inside a cosmetic compact when the cover of the compact is opened. The switch operates by means of a cam that rotates when the cover is opened, causing completion of an electrical circuit. Though Boyd originally applied for a patent covering any switch that automatically turns a

compact's lights on and off, he was obliged, by virtue of the examiner's citation of a prior patent for a device that controls the electrical current in a compact by a different means, to narrow his claim to a switch operated by a rotating cam in the hinge of the compact.

In 1978, Boyd gave an exclusive license for his cam switch to defendant D & E Trading Corporation ("D & E"). The license covered the cam switch and any improvements of that invention (patent number 4,126,145). The agreement was to expire on August 31, 1980, subject to a clause specifying the conditions for renewal. Also in 1978, D & E acquired 50 percent of the stock of Schildkraut Giftware Corporation ("SGC"), and SGC undertook to arrange for manufacturing and marketing of compacts using the cam switch. Initially, compacts containing Boyd's cam switch enjoyed some success, but sales declined as product returns, prompted by malfunctioning of the cam switch, increased.

SGC's principal, an engineer, undertook to develop an alternative device for controlling the compact lights. He devised a wedge switch, which drove a wedge between two wires to break the circuit when the cover closed. In contrast, Boyd's cam switch aligned metal strips on the cam with the battery when the cover opened. By October 1979, D & E and SGC discontinued sales of compacts containing Boyd's cam switch and sold only compacts using the newly developed wedge switch. In November, D & E exercised its right under the 1978 license and terminated the agreement as of August 1980.

Thereafter, Boyd, D & E, and SGC entered into a new agreement dated March 1, 1980. The 1980 agreement provided that the 1978 agreement was terminated as of January 1, 1980, instead of August 31, 1980. The 1980 agreement also provided that Boyd would give defendants an exclusive license for a design patent for compacts if Boyd was successful in obtaining a design patent for which he had applied. The design patent never issued. In negotiating the 1980 agreement, defendants insisted that Boyd acknowledge that the wedge switch did not infringe the mechanical patent for the cam switch. Boyd's attorneys made that representation in writing in a letter on which Boyd noted his agreement.

Boyd's complaint made various allegations. He claimed that he was fraudulently induced to enter the 1980 agreement because defendants knew but failed to disclose that similar compact designs were on the market and that Boyd's design patent application was doomed. He also sought an accounting under the 1978 agreement and 1980 agreement, if the latter was determined not to be fraudulently induced. Finally, he claimed unjust enrichment for use of his trade secrets and know-how, in the event that all contractual agreements were deemed ended as of August 1980.

Judge Werker, to whom the case was originally assigned, granted Boyd's unopposed motion for partial summary judgment, ruling that Boyd was entitled under the 1978 agreement to royalties for all compacts sold by defendants with the patented cam switch. In subsequent rulings, Judge Werker made clear that under the 1978 agreement, Boyd was entitled to royalties only for compacts embodying the '145 patent. At a status conference after Judge Werker's death, Judge Lowe reconfirmed Judge Werker's ruling as to the scope of the 1978 license agreement and referred the matter to a magistrate judge for an accounting.

The magistrate judge also reconfirmed that Boyd was entitled to royalties only for compacts using the '145 patent and could not collect for compacts using the wedge switch. He also ruled that the appearance of the '145 number on a few compacts using the wedge switch was "entirely accidental and unintentional" and did not estop defendants from denying that the wedge switch compacts did not infringe the '145 patent and from declining to make royalty payments with respect to those compacts. He determined that Boyd was owed $76,789 in unpaid royalties. Judge Lowe confirmed the findings of the magistrate judge, except as to the amount of royalties. On the basis of what she concluded was undisput-

ed evidence concerning the time periods of compact sales, she concluded that no royalties were unpaid.

## Discussion

### I. Patent Mismarking

██ Federal law makes patent mismarking a criminal offense. 35 U.S.C. § 292 (1988). The offense includes placing a patent number on a product without the consent of the patentee "with the intent ... of deceiving the public and inducing them to believe that the thing was made or sold by or with the consent of the patentee...." *Id.* § 292(a). The statute is enforceable by a *qui tam* remedy, enabling any person to sue for the statutory penalty and retain one-half of the recovery. *Id.* § 292(b). The scienter element of the penal offense also applies to the *qui tam* remedy. *See Brose v. Sears, Roebuck and Co.*, 455 F.2d 763, 768–69 & n. 8 (5th Cir.1972).

In the civil context, it has been held that placing a patent number on a product will estop a manufacturer from denying that his product embodies the patent for purposes of liability for both patent infringement damages, *see Piaget Novelty Co. v. Headley*, 108 Fed. 870, 872–73 (2d Cir. 1901); *Caanan Products, Inc. v. Edward Don & Co.*, 273 F.Supp. 492, 502 (N.D.Ill. 1966), *aff'd*, 388 F.2d 540 (7th Cir.1968), and patent license royalties, *see Gridiron Steel Co. v. Jones & Laughlin Steel Corp.*, 361 F.2d 791, 797 (6th Cir.1966).

Whether the scienter requirement of the mismarking offense is an element of marking estoppel has not been decided by this Court and has elicited varying views elsewhere. In *Crane Co. v. Aeroquip Corp.*, 364 F.Supp. 547, 560 (N.D.Ill.1973), *aff'd in part, rev'd in part without consideration of this point*, 504 F.2d 1086, 1093 (7th Cir.1974), the Court endorsed the application of marking estoppel without a scienter requirement, explicitly refusing to import the wrongful intent element from section 292. By contrast, in *Eastman Kodak Co. v. E.I. DuPont de Nemours & Co., Inc.*, 298 F.Supp. 718 (E.D.Tenn.1969), the Court declined to apply marking estoppel once it determined that "the error in mismarking

was mistakenly and innocently made with no intent to deceive." *Id.* at 733. *See also Dwight & Lloyd Sintering Co., Inc. v. American Ore Reclamation Co.*, 44 F.Supp. 401, 402 (S.D.N.Y.1941) (marking estoppel applied "in view of all the circumstances").

██ We think that marking estoppel, like other varieties of estoppel, should arise only when a consideration of all aspects of a defendant's pertinent conduct makes it inequitable for him to take a position contrary to his prior statements or actions. The act of impermissibly placing a patent number on a product, if limited in time and quantity, does not inevitably have such adverse effects for the patentee or the consuming public as to bar the mismarker from establishing that his product does not use the patent. Though a patentee or licensor normally will understandably have evidence only of sporadic instances of mismarking and need not identify widespread mismarking to raise a claim of estoppel, the accused mismarker should be able to defeat the claim by showing how inadvertent and limited the mismarking was. Of course, deliberate mismarking of even a limited nature or inadvertent mismarking over a prolonged period would justify an estoppel. *See Gridiron Steel Co.*, 361 F.2d at 797 (mismarking for 12 years); *Lathrop v. Rice & Adams Corp.*, 17 F.Supp. 622, 626 (W.D. N.Y.1936) (mismarking for five years).

██ In this case, the undisputed evidence showed that SGC instructed its Hong Kong manufacturer to reprint labels for the compacts using the wedge switch and delete the reference to Boyd's patent number. Because of a mistake made by non-English speaking employees, the first shipment of wedge switch cases were accidentally shipped with the old labels. The mistake was quickly noticed, the old labels were destroyed, and subsequent shipments bore no incorrect marking. Under these circumstances, the Magistrate Judge was entitled to conclude that the mismarking was "entirely accidental and unintentional" and "for a brief period," and did not provide a basis for marking estoppel.

## II. Other Issues

■ The remaining issues require little discussion. Boyd insists that the 1978 license agreement covered many aspects of the lighted compact, in addition to the patented cam switch. However, the agreement expressly conveys a license for "the Invention" and recites that Boyd has applied for a patent on "the Invention." The '145 patent covers the cam switch and nothing more. As Judge Werker and the Magistrate Judge ruled, Boyd gave a patent license, not a license to market a product. *Cf. Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979).

■ Boyd claims that he is due royalties under the 1978 and 1980 agreements with respect to compacts the defendants sold that use SGC's wedge switch. Preliminarily, we note that in rejecting this claim, the Magistrate Judge's finding of no infringement arguably raises an issue as to our appellate jurisdiction vis-a-vis the jurisdiction of the Court of Appeals for the Federal Circuit over claims arising under 28 U.S.C. § 1338 (1988). *See* 28 U.S.C. § 1295(a)(1) (1988). Though claims founded on section 1338 might arise in the course of litigation, thereby placing in doubt appellate jurisdiction outside the Federal Circuit, *see Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 814–15, 108 S.Ct. 2166, 2176, 100 L.Ed.2d 811 (1988); *id.* at 822–24, 108 S.Ct. at 2180–81 (Stevens, J., concurring), the determination of no infringement in this case was a finding that royalties were not due under a license. That was an adjudication of a state law claim within the District Court's diversity jurisdiction, *see Luckett v. Delpark, Inc.*, 270 U.S. 496, 510–11, 46 S.Ct. 397, 401–02, 70 L.Ed. 703 (1926), as to which our appellate jurisdiction is clear. On the merits, the claim was properly rejected in view of Boyd's explicit concession, in connection with the 1980 agreement, that the wedge switch did not infringe the '145 patent for the cam switch. The concession was well advised in view of the nearly certain preclusion of the claim by virtue of file wrapper estoppel.

■ Boyd's procedural objections are equally unavailing. Contrary to his claim, it was not improper for Judge Lowe, in effect, to grant partial summary judgment at the status conference she conducted following Judge Werker's death. Defendants had previously moved for summary judgment, and the matters not yet adjudicated by Judge Werker remained available for decision by Judge Lowe. Nor was there a denial of a jury trial by reason of the reference of the royalty computation issues to the Magistrate Judge. When Judge Lowe proposed referring the royalty calculations to a Magistrate Judge, she inquired of Boyd's counsel whether there was objection, and was told only that counsel would have to discuss the matter with his client. No objection was raised until the proceedings before the Magistrate Judge were well along. Even then, Boyd's counsel sought only to claim a jury trial on infringement as an issue purportedly distinct from the obligation to make royalty payments. Since the claim was for royalty payments, it was too late, after the royalty issues had been referred to the Magistrate Judge, to obtain a jury on the subsidiary issue of infringement, on which rested the royalty claim for the wedge switch compacts.

We have considered Boyd's remaining contentions and conclude that they lack merit for the reasons explained by the District Court.

The judgment of the District Court is affirmed.