91 F.3d 167
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
HIGH FREQUENCY PRODUCTS, INC., Plaintiff-Appellant,
v.
WYNN'S CLIMATE SYSTEMS, INC., Defendant-Appellee.
 95-1468.
 United States Court of Appeals, Federal Circuit.
 April 30, 1996.
 
 Before MAYER, MICHEL, and BRYSON, Circuit Judges.
 DECISION
 BRYSON, Circuit Judge.
 
 
 1
 High Frequency Products, Inc., (HFPI) appeals from a summary judgment entered against it by the United States District Court for the Southern District of Florida. That court held that defendant Wynn's Climate Systems, Inc., (Wynn's) is not liable for infringe ment of HFPI's patent and is not liable for patent mismarking. We affirm.
 
 BACKGROUND
 
 2
 HFPI is the owner of U.S. Patent No. 4,903,499, which relates to a system for refrigerant recovery and recycling in air conditioning devices. In 1990, HFPI granted a license to Wynn's to manufacture and sell products covered by the patent in exchange for royalty payments. The license agreement required Wynn's to mark the products with HFPI's patent number.
 
 
 3
 In 1993, Wynn's stopped selling products covered by the HFPI patent, and instead began selling newly designed products that HFPI admits are not within the scope of the patent's claims. The label on the back of Wynn's new devices, however, bore the number of HFPI's patent along with two other patent numbers and a statement that "other American and foreign patents" were pending. When HFPI alerted Wynn's that the new devices were marked with HFPI's patent number, Wynn's removed that number from its products.
 
 
 4
 HFPI filed suit against Wynn's alleging, inter alia, patent infringement and patent mismarking, see 35 U.S.C. §§ 271, 292. After discovery, the district court denied HFPI's motion for summary judgment and granted Wynn's cross-motion. On the issue of patent mismarking, the court held that HFPI was required to prove that Wynn's intended to deceive the public and that HFPI had not proffered any evidence of the necessary intent. On the issue of infringement, the court first noted that there was no actual infringement, as it was undisputed that the patent claims did not read on the accused device. The court then rejected HFPI's argument that the equitable doctrine of patent marking estoppel prevented Wynn's from denying that its products infringed HFPI's patent. The district court based its conclusion on the proposition that the marking estoppel doctrine is no longer viable, but it added that in any event the doctrine is inapplicable "[a]bsent inequitable conduct and detrimental reliance."
 
 DISCUSSION
 
 5
 HFPI first challenges the district court's refusal to apply the equitable doctrine of patent marking estoppel. The doctrine of marking estoppel provides that a party that marks its product with a patent number may be estopped from claiming in an infringement suit that the product is not covered by the patent. See Boyd v. Schildkraut Giftware Corp., 936 F.2d 76, 79, 19 USPQ2d 1223, 1225 (2d Cir.), cert. denied, 502 U.S. 941 (1991); Keller v. Clark Equip. Co., 210 USPQ 742, 757-59 (D.N.D.1981), aff'd, 715 F.2d 1280, 219 USPQ 585 (8th Cir.1983), cert. denied, 464 U.S. 1044 (1984); Crane Co. v. Aeroquip Corp., 364 F.Supp. 547, 560, 179 USPQ 596, 606 (N.D.Ill.1973), aff'd in part, rev'd in part, 504 F.2d 1086, 183 USPQ 577 (7th Cir.1974).
 
 
 6
 The district court noted that the current state of the doctrine of marking estoppel is unclear, as this court has yet to endorse or reject the doctrine. After reviewing the cases applying the doctrine over the years, however, the district court determined that the doctrine is no longer viable.
 
 
 7
 It is not necessary to decide whether the doctrine of marking estoppel is still viable. Instead, we are satisfied that, regardless of its vitality as a general matter, the doctrine is inapplicable under the circumstances of this case.
 
 
 8
 In arguing for the application of the doctrine of marking estoppel here, HFPI relies most heavily on the decisions in Crane and Boyd. In Crane, the district court found that there was no literal infringement but held that marking estoppel applied. The Seventh Circuit, however, reversed the district court on the issue of literal infringement and thus affirmed the judgment on a ground other than marking estoppel. 504 F.2d at 1093, 183 USPQ at 581. In Boyd, the court found that marking estoppel was not appropriate where the mismarking was accidental and was corrected when noticed. The Boyd court explained:
 
 
 9
 We think that marking estoppel, like other varieties of estoppel, would arise only when a consideration of all aspects of a defendant's pertinent conduct makes it inequitable for him to take a position contrary to his prior statements or actions. The act of impermissibly placing a patent number on a product, if limited in time and quantity, does not inevitably have such adverse effects for the patentee or the consuming public as to bar the mismarker from establishing that his product does not use the patent.... [T]he accused mismarker should be able to defeat the claim by showing how inadvertent or limited the mismarking was. Of course, deliberate mismarking of even a limited nature or inadvertent mismarking over a prolonged period would justify an estoppel.
 
 
 10
 936 F.2d at 79, 19 USPQ2d at 1225.
 
 
 11
 The undisputed facts before the district court established that HFPI's patent number was placed on Wynn's new devices by an employee who mistakenly thought that Wynn's owned the patent. Under these circumstances, Wynn's act of marking its devices with HFPI's patent number is the apparent product of employee error and does not reflect a decision by Wynn's to claim that a patent owned by another company covers its devices. Equity therefore does not compel Wynn's to be bound to that position in litigation with HFPI. Furthermore, "aspects of [the] defendant's pertinent conduct," in addition to the mistaken nature of the mismarking, indicate that it would be inequitable to invoke marking estoppel against Wynn's: the patent number was in very small type on the bottom rear of the devices and was not used in any advertising or promotional material; the period of mismarking lasted only 18 months; and Wynn's corrected the error as soon as HFPI alerted it to the mismarking. Compare Gridiron Steel Co. v. Jones & Laughlin Steel Corp., 361 F.2d 791, 797, 149 USPQ 877, 881-82 (6th Cir.1966) (knowing marking with another's patent number for 12 years); Crane, 364 F.Supp. at 559-60, 179 USPQ at 606-07 (knowing marking on newly designed device with another's patent number for more than 3 years). Moreover, other than the inaccurate label, Wynn's did not represent to the public that its devices were covered by HFPI's patent. See Keller, 210 USPQ at 758.
 
 
 12
 Significantly, HFPI admits that its patent claims do not read on the new Wynn's devices; to extend the doctrine of marking estoppel to this case would therefore result in imposing on Wynn's a position that HFPI itself admits is not true. For that reason, the doctrine of marking estoppel, if applied in this setting, would confer an unwarranted windfall on HFPI and visit an unjustified penalty on Wynn's. Accordingly, while we do not adopt the district court's broad conclusion that the doctrine of marking estoppel is inapplicable in any setting, we agree with the court's narrower holding that it is inapplicable to the facts of this case.
 
 
 13
 HFPI next asserts that the district court erred in finding no evidence of the scienter required under 35 U.S.C. § 292(a) to establish liability on a federal patent mismarking charge. Section 292(a) provides:
 
 
 14
 Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, or sold by him ... the patent number ... with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made or sold by or with the consent of the patentee ... [s]hall be fined not more than $500 for every such offense.
 
 
 15
 Wynn's clearly could not be liable for patent mismarking absent a showing that Wynn's had the specific intent to deceive the public as to the origin or sponsorship of the products. See Arcadia Mach. & Tool, Inc. v. Sturm, Roger & Co., 786 F.2d 1124, 1125, 229 USPQ 881, 883 (Fed.Cir.1986); International Envtl. Dynamics, Inc. v. Fraser, 647 F.2d 77, 79, 210 USPQ 881, 883 (9th Cir.1981); Accent Designs, Inc. v. Jan Jewelry Designs, Inc., 827 F.Supp. 957, 968-70, 30 USPQ2d 1734, 1740-42 (S.D.N.Y.1993). The evidence HFPI proffered to the district court established only that the Wynn's employee responsible for creating the labels intended to place the HFPI patent number on the new Wynn's product. As the district court noted, however, the evidence showed that the employee placed the patent number on the products because of his mistaken belief that Wynn's owned the HFPI patent. Because the employee knew that marking a patent number on a product was necessary to protect the patentee's rights under the patent, see 35 U.S.C. § 287, he placed the HFPI patent number, along with others, on the new product to protect what he perceived as Wynn's patent rights. We agree with the district court that this evidence does not satisfy the requirement of specific intent to deceive the public that is necessary to establish liability under section 292(a).