NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1070

SLIP TRACK SYSTEMS, INC.,

Plaintiff-Appellee,

v.

METAL LITE, INC.,

Defendant-Appellant.

———————————————

DECIDED:  December 1, 2004

———————————————

Before NEWMAN, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and SCHALL, <u>Circuit Judge</u>.

Opinion for the court filed by <u>Circuit Judge</u> SCHALL.  Opinion dissenting-in-part filed by <u>Circuit Judge</u> NEWMAN.

SCHALL, <u>Circuit Judge</u>.

### DECISION

Metal Lite, Inc. ("Metal Lite") appeals the final judgment of the United States District Court for the Central District of California (1) that U.S. Patent No. 5,127,760 ("the '760 patent"), owned by Slip Track Systems, Inc. ("Slip Track"), has priority over U.S. Patent. No. 5,127,203 ("the '203 patent"), owned by both Metal Lite and Slip Track;

and (2) that Metal Lite infringed the '760 patent and is liable for damages in the amount of $7,000,000 by reason of that infringement. Slip Track Sys., Inc. v. Metal Lite, Inc., No. SA CV 98-20 AHS (C.D. Cal. Oct. 22, 2003) ("Final Judgment"). For the reasons set forth below, we affirm the judgment of the district court on the priority issue. However, we vacate the judgment of infringement and the award of damages in favor of Slip Track and remand the case to the district court for further proceedings on the issue of infringement based upon the claim construction set forth in this opinion.

## DISCUSSION

### I.

After remand following our decision in Slip Track Systems, Inc. v. Metal Lite, Inc., 304 F.3d 1256 (Fed. Cir. 2002) ("Slip Track II"), the district court awarded the '760 patent priority over the '203 patent. The district court's award of priority was based on a jury's finding that the invention of the '760 patent was reduced to practice before the invention of the '203 patent. Metal Lite's sole argument on appeal with respect to the priority issue is that the district court erred in not granting its motion in limine to bar Slip Track, an assignee and 50% owner of the '203 patent, from challenging the validity of the '203 patent based upon the doctrine of assignee estoppel. We find no error in the district court's decision.

Assignee estoppel is an equitable doctrine which, under appropriate circumstances, bars the assignee of a patent from contesting the validity of the assigned patent. C.f. Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1225 (Fed. Cir. 1988) ("[D]espite the public policy encouraging people to challenge potentially invalid patents, there are still circumstances in which the equities of the contractual

relationships between the parties should deprive one party . . . of the right to bring that challenge."). For example, circumstance may warrant application of the doctrine to prevent an assignee from avoiding royalty payments otherwise due under an assignment contract by challenging the validity of the assigned patent. See Baladevon, Inc. v. Abbott Labs., Inc., 871 F. Supp. 89, 96 (D. Mass. 1994); Sybron Transition Corp. v. Nixon, 770 F. Supp. 803, 811-12 (W.D.N.Y. 1991). This case, however, does not present such circumstances. Slip Track only asserted invalidity of the '203 patent after Metal Lite put Slip Track's '760 patent into reexamination before the Patent and Trademark Office on the grounds that it was invalid in view of the '203 patent. See Slip Track Sys., Inc. v. Metal Lite, Inc., 159 F.3d 1337, 1338-39 (Fed. Cir. 1998) ("Slip Track I"). Moreover, Slip Track owns 100% of the '760 patent but only 50% of the '203 patent. The reexamination consequently forced Slip Track to choose between protecting the validity of either the '760 patent or the '203 patent. Slip Track made the natural decision to protect its greater of two property interests, the '760 patent. There is nothing inequitable here. Having rejected Metal Lite's assignee estoppel argument, we affirm the judgment of the district court on the priority issue.

II.

After determining that the '760 patent has priority over the '203 patent, the district court granted Slip Track's motion in limine barring Metal Lite from contesting infringement and subsequently entered judgment against Metal Lite for infringement of the '760 patent. The district court based its decision to grant the motion on three separate grounds: (1) the doctrine of marking estoppel; (2) our decision in Slip Track II; and (3) Metal Lite's litigation conduct. Slip Track Sys., Inc. v. Metal Lite, Inc., No. SA

CV 98-20 AHS, slip op. at 6-13 (C.D. Cal. Dec. 11, 2003) ("Order Denying Motion for New Trial").  For the reasons that follow, we reject each of the grounds upon which the district court relied in granting Slip Track's motion in limine.  We consequently vacate the judgment of infringement and damages in favor of Slip Track and remand the case to the district court for proceedings on the issue of infringement.

A.  Marking Estoppel

The district court determined that Metal Lite's marking of its product with the '760 and '203 patents estopped it from contesting infringement of the '760 patent under the doctrine of marking estoppel.  Specifically, the court determined that the combination of (1) Metal Lite's deliberate marking with the '760 patent from 1994 to September of 1995, while in partnership with Slip Track; and (2) Metal Lite's continued marking with the '203 patent following dissolution of the partnership in September of 1995, justified estopping Metal Lite from subsequently denying infringement of the '760 patent.  The district court reasoned that marking with the '203 patent was tantamount to marking with the '760 patent because Metal Lite had argued invalidity of the '760 patent during the priority dispute based on overlapping subject matter with the '203 patent.  Order Denying Motion for New Trial, slip op. at 7-9.

At the outset, we note that the parties dispute the continued viability of the doctrine of marking estoppel.  We find it unnecessary to address this issue because, even assuming the doctrine remains viable, it does not apply to the facts of this case. "[The doctrine of] marking estoppel, like other varieties of estoppel, should arise only when a consideration of all aspects of a defendant's pertinent conduct makes it inequitable for him to take a position contrary to his prior statements or actions." Boyd

v. Shildkraut Giftware Corp., 936 F.2d 76, 79 (2d Cir. 1991). The doctrine serves to protect the public by cautioning manufacturers that "care must be taken in avoiding misrepresentation to the public that goods are protected by a patent." Smithkline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 890-91 (Fed. Cir. 1988) (quoting Crane Co. v. Aeroquip Corp., 364 F. Supp. 547, 560 (N.D. Ill. 1973)).

It is undisputed that Metal Lite only marked its product with the '760 patent for a period of about one year while in partnership with Slip Track. This marking was deliberate. Indeed, Slip Track consented to the marking. There is no evidence, however, that Metal Lite deliberately mismarked its products during this time. In other words, nothing indicates Metal Lite believed its product to fall outside the scope of the '760 patent's claims when it made the decision to mark with the '760 patent. See Boyd, 936 F.2d at 79 (explaining that "deliberate mismarking" may provide grounds for applying estoppel); see also Crane, 364 F. Supp. at 560 (applying marking estoppel to a licensee who continued marking its product with the licensed patent after designing around the claimed invention). The similarities between the '203 and '760 patents also fail to provide a sufficient basis for applying estoppel. In particular, the record does not indicate that marking with the '203 patent created a risk to the public—that is, a risk of misleading the public to believe the accused product was also covered by the '760 patent—sufficient to warrant application of estoppel.

B. The Decision of the Federal Circuit in *Slip Track II*

Having concluded that the district court erred in its application of marking estoppel, we turn to the court's second basis for granting Slip Track's motion in limine:

this court's decision in <u>Slip Track II</u>.[1] The district court stated that in <u>Slip Track II</u> we determined that, with the exception of the wallboard limitation of the '203 patent, the '203 and '760 patents cover identical subject matter. <u>Order Denying Motion for New Trial</u>, slip op. at 10. The court reasoned that the necessary implication of this is that the claims of the two patents are virtually identical. <u>Id.</u> The district court further reasoned that since Metal Lite made its product pursuant to the '203 patent, it must also infringe the '760 patent. <u>Id.</u>

The district court's decision suffers from two errors: (1) equating the scope of the interfering subject matter with the scope of the claims of the two patents; and (2) equating the scope of the interfering subject matter with the elements of the accused product. With respect to the first issue, although this case involves an interference proceeding filed in district court as opposed to the PTO, we have explained that "the count is not a claim to an invention." <u>In re Van Geuns</u>, 988 F.2d 1181, 1184 (Fed. Cir. 1993). Rather, the overlapping subject matter "of an interference is merely the vehicle for contesting the priority of invention and determining what evidence is relevant to the <u>issue of priority</u>." <u>Id.</u> (emphasis added). The definition of interfering subject matter is not relevant to the separate issue of infringement. Therefore, after determining priority, the district court had an obligation to interpret the claims of the '760 patent in order to address the separate issue of infringement.

After construing the claims, the second step in the infringement analysis requires the court to compare the properly construed claims to the accused product. <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995) (<u>en banc</u>), aff'd, 517 U.S.

---

[1] The appeal in <u>Slip Track II</u> concerned the scope of interfering subject matter between the '760 and '203 patents.

370, 116 S. Ct. 1384, 134 L.Ed.2d 577 (1996). In bypassing this step, the district court failed to consider that even assuming virtually identical breadth of the claims of the '203 and '760 patents, Metal Lite's products do not necessarily infringe the '760 patent. In other words, the fact that the accused product was made pursuant to the '203 patent and, under the district court's reasoning, pursuant to the virtually identical '760 patent, does not necessarily mean the completed product actually contains all of the limitations of the '760 patent. In sum, the district court was required to determine the issue of infringement using our two-step analysis of (1) construing the claims and (2) comparing the accused product to the properly construed claims. Id.

C. Metal Lite's Litigation Conduct

The district court cited Metal Lite's litigation conduct as a third reason for barring Metal Lite from contesting infringement. The court noted that Metal Lite's sole defense up until three months before trial was invalidity of the '760 patent based upon priority of the '203 patent. The court also noted that it was not until May 12, 2003, that Metal Lite requested a claim construction, and not until July of 2003 that Metal Lite raised its specific "claims-based theory of non-infringement."[2] Order Denying Motion for New Trial, slip op. at 12. The court found Metal Lite's tardiness in presenting its claims-based theory of non-infringement contrary to the objective reflected in Rule 26 of the Federal Rules of Civil Procedure of "fully air[ing] each parties' theories of the case well in advance of trial." Id. at 13.

---

[2]     The district court distinguished between invalidity-based and claims-based theories of non-infringement, the invalidity-based theory being premised on invalidity of the '760 patent and the claims-based theory being premised on a traditional non-infringement position.

An evidentiary ruling based on a party's litigation conduct is not unique to patent law, so we apply the standard of review of the regional circuit of the district court. Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1363 (Fed. Cir. 2004). The Ninth Circuit reviews evidentiary rulings for an abuse of discretion. Heyne v. Caruso, 69 F.3d 1475, 1478 (9th Cir. 1995). In this case, we conclude that the district court erred in granting Slip Track's motion in limine based on Metal Lite's litigation conduct and that the error rose to the level of an abuse of discretion. We so hold because the record does not support the district court's position that, up until three months before trial, Metal Lite's sole defense of non-infringement was invalidity of the '760 patent.

In its answer to Slip Track's complaint for patent infringement, Metal Lite denied infringement of the '760 patent (Answer and Countercl. at 3) and separately sought a declaration of invalidity (Answer and Countercl. at 9). Metal Lite's delay after that in presenting its claims-based theory of non-infringement is explained by the long procedural history of this case. Until recently in the case, the focus of both parties was on the issue of priority. (Decl. Ronald P. Oines at 7.) This was a logical focal point considering that the issue of infringement would only become relevant in the event the '760 patent was declared senior to the '203 patent.[3] Indeed, it is telling that, as of our remand in Slip Track II, Slip Track had not come forward with its claims-based theory of infringement. Accordingly, we hold that the district court abused its discretion in granting Slip Track's motion in limine barring Metal Lite from contesting infringement.

---

[3] This is because Slip Track, as a co-owner of the '203 patent, could not be sued for infringing the '203 patent.

III.

The district court entered judgment of infringement of the '760 patent without having construed the pertinent claim terms at issue. On appeal, Metal Lite argues that under the claim construction it urges, its accused product does not infringe the '760 patent. Slip Track, on the other hand, argues that under its proposed claim construction, the accused product does infringe the '760 patent. Both parties urge us to construe the pertinent claim terms at this time. In view of the relatively straightforward nature of the claim construction issue and the interest in bringing this litigation to a conclusion, we accept the parties' invitation to construe the claims.

The '760 patent relates to a "slotted track" or "slotted header" wall assembly used to alleviate stress on a wall's infrastructure caused by environmental forces, such as earthquakes. Slip Track alleges that Metal Lite's product, a particular slotted track wall assembly, infringes the claims of the '760 patent. The patent contains two independent claims and eight dependent claims. Claim 1 of the '760 patent is representative of the claims at issue and reads:

> A building construction assembly that includes a header and a stud wherein the header is capable of vertical movement relative to said assembly comprising:
>> a header having a web and flanges with said flanges connected to said web;
>> at least one of said flanges having at least one vertical slot therein;
>> a stud having a width less than the distance between said flanges of said header and having a top end;
>> said stud having at least one hole formed therein proximal to said top end;
>> said top end fitting between said flanges perpendicular to said header positioned so that said hole is aligned with said vertical slot; and

> an attachment means passing through said slot and
> through said hole to slideably unite said header to
> said stud whereby said slot permits said header to
> move vertically with respect to said stud while
> restricting horizontal movement of said header.

The sole claim construction issue relates to the limitation "said stud having at least one hole formed therein proximal to said top end." Metal Lite argues that the prosecution history requires the stud to have a "pre-existing hole," meaning a stud with a hole in existence prior to inserting the stud between the flanges of the header. Slip Track argues that the limitation in no way requires a pre-existing hole and that the claim encompasses assemblies wherein the hole is formed before or after inserting the stud between the flanges. Requiring a pre-existing hole, Slip Track argues, would impermissibly limit the apparatus claim to a product-by-process claim and also would exclude the preferred embodiment.

We agree with Metal Lite that claim 1 is limited to a stud having a hole in existence prior to inserting the stud between the flanges of the header. Claim construction starts with the language of the claims as understood by one of ordinary skill in the art. See ResQNet.com, Inc. v. Lansa, Inc., 346 F.3d 1374, 1378 (Fed. Cir. 2003); CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002); Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999). Intrinsic evidence—namely, the specification and, if in evidence, the prosecution history—are also highly relevant to claim construction. See Victronics, Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). One reason "[t]his court . . . considers the prosecution history . . . [is] to determine whether the applicant clearly and unambiguously 'disclaimed or disavowed [any interpretation] during prosecution in order

to obtain claim allowance.'" <u>Middleton, Inc. v. Minn. Mining & Mfg. Co.</u>, 311 F.3d 1384, 1388 (Fed. Cir. 2002) (quoting <u>Standard Oil Co. v. Am. Cyanamid Co.</u>, 774 F.2d 448, 452 (Fed. Cir. 1985)); <u>see also</u> <u>Omega Eng'g, Inc. v. Raytek Corp.</u>, 334 F.3d 1314, 1324 (Fed. Cir. 2003) (explaining that prosecution disclaimer does not apply "where the alleged disavowel of claim scope is ambiguous").

In this case, the prosecution history of the '760 patent reveals that the patentee limited its invention to studs having pre-existing holes. Claim 1, as originally drafted, read, in pertinent part, "said stud being aligned with said vertical slot." On March 29, 1991, the Examiner issued a first rejection finding the claim obvious and "indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention." The Examiner specifically asked: "Re: claim 1 . . . line 10, how is the stud 'aligned' with the vertical slot . . . ?" The patentee responded by amending claim 1 to read: "said stud having at least one hole formed therein proximal to said top end; said top end fitting between said flanges perpendicular to said header positioned so that said hole is aligned with said vertical slot." The patentee also made the following remark accompanying the amendment:

> First, the Examiner's question of how the stud is aligned with the vertical slot has been answered by adding hole 22 proximal to top end 40 of the stud as an element of the claims. The hole 22 serves as a reference point on the stud which is used to align the stud and the slot. This amendment should overcome the Examiner's § 112 rejection based upon indefiteness with respect to claim 1 and the claims dependent therefrom.

This amendment and accompanying statement provide clear and unambiguous evidence that the patentee limited the claim to a stud with a pre-existing hole.

Slip Track's argument that such a construction improperly limits its apparatus claim to a product-by-process claim is unavailing. Our case law makes clear that statements made during prosecution may limit what began as an apparatus claim to a product-by-process claim. See Minn. Mining & Mfg. Co. v. Avery Dennison Corp., 350 F.3d 1365, 1373 (Fed. Cir. 2003); Vanguard Prods. Corp. v. Parker Hannifin Corp., 234 F.3d 1370, 1372 (Fed. Cir. 2000). This is exactly what Slip Track did in this case. By making the above amendment, the patentee overcame the Examiner's obviousness and indefiniteness rejection, but did so at the price of limiting its claim to a product made by a particular process. We also reject Slip Track's argument that our claim construction is wrong because it excludes the preferred method of assembly. This is because, while recognizing the general rule disfavoring a claim construction that excludes a preferred embodiment, the prosecution disclaimer in this case provides "highly persuasive evidentiary support" for our construction. See Vitronics, 90 F.3d at 1583.

In short, we hold that the limitation "said stud having at least one hole formed therein proximal to said top end," means that a hole must be formed in the stud prior to insertion of the stud between the flanges so that the hole can be used to align the stud with the vertical slot before passing the attachment means through the vertical slot and into the stud. In the infringement proceedings that are to follow on remand, the district court is to apply this claim construction.

IV.

In sum,

(1) We affirm the district court's grant of Slip Track's motion in limine precluding Metal Lite from offering evidence on the issue of assignee estoppel. We

consequently <u>affirm</u> the district court's judgment on the issue of priority of the '760 patent over the '203 patent.

(2)    Because we find error in the district court's grant of Slip Track's motion in limine precluding Metal Lite from contesting infringement, we <u>vacate</u> the district court's judgment of infringement and award of damages in favor of Slip Track.

(3)    We consequently <u>remand</u> the case to the district court for further proceedings on the issue of infringement based upon the claim construction set forth in this opinion.

We thus affirm-in-part, vacate-in-part, and remand.

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1070

SLIP TRACK SYSTEMS, INC.,

Plaintiff-Appellee,

v.

METAL LITE, INC.,

Defendant-Appellant.

NEWMAN, <u>Circuit Judge</u>, dissenting in part.

In this exceedingly complex and multi-issued case, I do not discern reversible error in the district court's opinion, and would affirm it in the major respects presented on this appeal.