NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1460, -1486

BRADY CONSTRUCTION INNOVATIONS, INC.,

Plaintiff-Appellant,

v.

PERFECT WALL, INC.
and METAL-LITE, INC.,

Defendants-Cross Appellants,

and

STEELER, INC.,

Defendant-Appellee,

and

SCAFCO CORPORATION,

Defendant-Appellee.


R. Joseph Trojan, Trojan Law Offices, of Beverly Hills, California, argued for plaintiff-appellant.

Ronald P. Oines, Rutan & Tucker, LLP, of Costa Mesa, California, argued for defendants-cross appellants.  With him on the brief was Treg A. Julander.

Delbert J. Barnard, Barnard Intellectual Property Law, Inc., of Seattle, Washington, argued for defendant-appellee Steeler, Inc.

Breton A. Bocchieri, Thelen Reid Brown Raysman & Steiner LLP, of Los Angeles, California, argued for defendant-appellee Scafco Corporation.

Appealed from:  United States District Court for the Central District of California

Chief Judge Alicemarie H. Stotler

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1460, -1486

BRADY CONSTRUCTION INNOVATIONS, INC.,

Plaintiff-Appellant,

v.

PERFECT WALL, INC. and METAL-LITE, INC.,

Defendants-Cross
Appellants,

and

STEELER, INC.,

Defendant-Appellee,

and

SCAFCO CORPORATION,

Defendant-Appellee.

Appeal from United States District Court for the Central District of California in case no. 07-CV-219, Judge Alicemarie H. Stotler.

_____

DECIDED:  August 15, 2008

_____

Before MICHEL, <u>Chief Judge</u>, RADER and MOORE, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

Brady Construction Innovations, Inc. ("Brady") appeals from the district court's summary judgment of invalidity, and Perfect Wall, Inc. and Metal Lite, Inc. cross-appeal from the district court's denial of their motion for attorneys' fees. Order, Brady Construction Innovations, Inc. v. Perfect Wall, Inc., No. 07-219 (C.D. Cal. Jun. 13, 2007) ("Summary Judgment Order"). We heard oral argument on July 7, 2008. Because we conclude that claim 11 of U.S. Reissued Patent No. RE39,462 ("the reissue patent"), for which Brady applied more than two years after issuance of the original patent, enlarged the scope of the claims of that patent, we affirm the district court's grant of summary judgment of invalidity. We also conclude that the district court did not clearly err in finding the case not exceptional and thus affirm its denial of the motion for attorneys' fees.

## I.

Todd Brady is the inventor of the patent at issue and the president of SlipTrack Systems and Brady Construction Innovations, Inc. ("Brady").[1] In 1990, Todd Brady filed a patent application that issued as U.S. Patent No. 5,127,760 ("the '760 patent" or "original patent"). The '760 patent claimed a building construction assembly that allows a header in a wall some vertical freedom of movement relative to the studs, such that stresses applied to the assembly do not result in wall cracks. Such a configuration is useful when stresses vary in a wall for example through accumulation of snowfall or from an earthquake.

The '760 patent describes two preferred embodiments. In the first embodiment, the stud and the header are aligned and then a hole is drilled in the stud using a self-

---

[1] Brady Construction Innovations, Inc. was formerly known as SlipTrack.

2

2007-1460, -1486

tapping screw.  In the other embodiment, the holes in the stud are pre-existing, allowing the stud and header to be aligned using the holes.

The original patent application contained nine claims, with claims 1 and 6 being independent.  Original claim 1 recited:

> 1.      A building construction assembly that includes a header and a stud wherein the header is capable of vertical movement relative to said stud comprising:
> a header having a web and flanges with said flanges connected to said web;
> at least one of said flanges having at least one vertical slot therein;
> a stud having a width less than the distance between said flanges of said header;
> <u>said stud being aligned with said vertical slot</u>; and
> an attachment means passing through said slot and through said hole to unit[e] said header to said stud whereby said slot permits said header to move vertically with respect to said stud while restricting horizontal movement of said header.

J.A. at 268 (emphasis added).[2]

The examiner rejected all nine claims in the original application as indefinite and obvious.  As to indefiniteness, the examiner queried, "how is the stud 'aligned' with the vertical slot?"  J.A. at 259.[3]  In response, Brady canceled claims 6 through 9, and in claim 1, the only remaining independent claim, Brady deleted the limitation that the stud be "aligned with said vertical slot" and amended it to read "said stud having at least one hole formed therein proximal to said top end."  Brady explained: "[T]he Examiner's question of how the stud is aligned with the vertical slot has been answered by adding hole 22 proximal to top end 40 of the stud as an element of the claims.  The hole 22 serves as a reference point on the stud which is used to align the stud and the slot."

---

[2]      Claim 6 included a limitation that an "elongated slotted passage" be "aligned" with the stud.

[3]      The examiner also cited the "aligned" limitation of claim 6, the only other independent claim, as having the same indefiniteness problem.

3

J.A. at 278. In the same response, Brady also added a new independent claim 7, which included the same limitation now in claim 1: "said stud having at least one hole formed therein proximal to said top end." The examiner ultimately allowed the claims as amended, and the '760 patent issued in 1992.

As issued, claim 1 of the '760 patent recited:

> 1. A building construction assembly that includes a header and a stud wherein the header is capable of vertical movement relative to said assembly comprising:
> a header having a web and flanges with said flanges connected to said web;
> at least one of said flanges having at least one vertical slot therein;
> a stud having a width less than the distance between said flanges of said header and having a top end;
> <u>said stud having at least one hole formed therein proximal to said top end</u>;
> said top end fitting between said flanges perpendicular to said header positioned so that said hole is aligned with said vertical slot; and
> an attachment means passing through said slot and through said hole to slideably unite said header to said stud whereby said slot permits said header to move vertically with respect to said stud while restricting horizontal movement of said header.

'760 patent, col.4 ll.35-54 (emphasis added).

SlipTrack then sued Metal Lite in the Central District of California alleging that the '760 patent had priority over a Metal Lite patent that issued on the same day, and that Metal Lite's products infringed the '760 patent. In September 2003, a jury found that the '760 patent was entitled to priority, that Metal Lite's products infringed the '760 patent, and that SlipTrack was entitled to damages.

On appeal, this court affirmed the priority determination but vacated and remanded the infringement determination. SlipTrack Sys., Inc. v. Metal Lite, Inc., 113 Fed. Appx. 930 (Fed. Cir. Dec. 1, 2004). Specifically, this court held that the claim limitation "said stud having at least one hole formed therein proximal to said top end"

4

2007-1460, -1486

means "that a hole must be formed in the stud prior to insertion of the stud between the flanges so that the hole can be used to align the stud with the vertical slot before passing the attachment means through the vertical slot and into the stud." Id. at 938. This court based its claim construction primarily on statements in the prosecution history, holding that "the prosecution history of the '760 patent reveals that the patentee limited its invention to studs having pre-existing holes." Id. at 937.[4] We vacated the district court's judgment of infringement and remanded for further proceedings consistent with our claim construction. Id. at 938.

On remand, the district court granted Metal Lite's motion for summary judgment of non-infringement because the accused products did not use studs with pre-existing holes. SlipTrack Sys., Inc. v. Metal Lite, Inc., No. 98-20 AHS, slip op. at 8 (C.D. Cal. June 15, 2005). Although SlipTrack initially appealed that decision, it later moved to voluntarily dismiss its appeal. SlipTrack Sys., Inc. v. Metal Lite, Inc., 168 Fed. Appx. 943 (Fed. Cir. Feb. 10, 2006).

On February 5, 2005, following our claim construction decision and more than twelve years after the original patent issued, Brady filed an application for reissue of its '760 patent. The reissue application included all of the original claims and one additional claim:

> 11. A building construction assembly that includes a header and a stud wherein the header is capable of vertical movement relative to said assembly comprising:

---

[4] Just before our decision construing this claim term, a different district court in a case involving the same patent but a different defendant also concluded that the claims of the '760 patent require a pre-existing hole. SlipTrack Sys., Inc. v. Steeler Metals, Inc., No. C-04-0462-PVT, slip op. at 11 (N.D. Cal. Oct. 12, 2004). This court issued a Rule 36 affirmance of that decision. Sliptrack Sys., Inc. v. Steeler Metals, Inc., 158 Fed. Appx. 283 (Fed. Cir. Nov. 21, 2005).

5

2007-1460, -1486

a header having a web and flanges with said flanges connected to said web; at least one of said flanges having at least one vertical slot therein;

a stud having a width less than the distance between said flanges of said header and having a top end;

said stud having at least one hole formed therein proximal to said top end by an attachment means passing through said slot and through said hole to slideably unite said header to said stud whereby said slot permits said header to move vertically with respect to said stud while restricting horizontal movement of said header;

said top end fitting between said flanges perpendicular to said header positioned so that said hole is aligned with said vertical slot.

Reissue patent, col.6 ll.6-27 (emphasis added). In prosecuting the reissue, Brady alerted the PTO to the fact that two courts, including this court, had construed claim 1 of the '760 patent to cover only one of the disclosed embodiments in the patent and made clear that claim 11 was being added in reissue to claim the preferred embodiment that had been excluded by our claim construction. But Brady argued that claim 11 was narrower in scope than original claim 1 because claim 11 requires the additional limitation that the hole be made by a self-tapping screw. Metal Lite protested the reissue application before the PTO, although the examiner may not have considered the protest since it was never included as part of the reissue file wrapper. The examiner allowed claim 11 stating: "[N]ewly presented claim 11 includes all of the limitations of previously allowed claim 1 with the additional limitation 'by' [] which further narrows the scope to a specific embodiment of the invention wherein the 'at least one hole' is formed by the 'attachment means' []." J.A. at 153.

In June 2006, after receiving the Notice of Allowability as to the reissue application, Brady issued an "Industry Announcement," which stated that it would receive "a new patent for [its] SLP-TRK Brand slotted track product." The announcement also stated:

6

> Previously, the Court of Appeals had limited the original slotted track patent in a way that Brady never intended. This new patent removes the limitation recently imposed by the Court of Appeals. From this date forward, anyone who manufactures and sells [any style of] slotted track will infringe Brady's new patent regardless of how the slotted track is installed.

J.A. at 438 (emphasis in original). The patent reissued on January 9, 2007.

The same day, Brady sued a number of companies including Perfect Wall, Inc., Metal Lite, Inc., Steeler, and SCAFCO (collectively "defendants"), alleging that certain "slotted track products" infringed the claims of the reissue patent. Defendants moved for summary judgment of invalidity as to the reissue patent. The district court issued a tentative ruling on June 11, 2007, tentatively granting defendants' motion for summary judgment of invalidity because the reissue violated Section 251's prohibition on broadening reissues more than two years after the original patent issued, denying Metal Lite's motion on the alternative ground that the reissue violated the recapture rule, and denying Metal Lite's motion for attorney's fees. Following a hearing on the motions, the district court granted the motion for summary judgment of invalidity on June 13, 2007. The district court concluded that claim 11 "includes within its scope a user who places a stud without a pre-existing hole between the flanges of the header and then creates the hole through the stud with a self-tapping screw." Summary Judgment Order at 7. Because reissue claim 11 broadened the scope of the original patent and Brady filed his reapplication more than two years after the original patent issued, the district court held reissue claim 11 invalid. The district court also denied Metal Lite's motion for attorney's fees.

7

We review a district court's grant of summary judgment de novo. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). At summary judgment, all ambiguous facts and inferences must be construed in the light most favorable to the non-movant. Id. Summary judgment is only appropriate if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Id.

A.    Reissue Validity

Under 35 U.S.C. § 251, a patentee can seek reissue of his patent when he "through error without any deceptive intention . . . claim[ed] more or less than he had a right to claim in the patent." If the patentee seeks reissue more that two years from the grant of the original patent, however, the reissued patent cannot "enlarg[e] the scope of the claims of the original patent." Id.[5]

"Whether the claims of a reissue patent violate 35 U.S.C. § 251, and thus are invalid, is a question of law, which we review de novo." N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1349 (Fed. Cir. 2005). In this case, we conclude that Brady's reissue claim 11, the only asserted claim, enlarged the scope of the claims of the original patent. Since Brady applied for reissue more than two years

---

[5]    Metal Lite argues, as an alternative ground for affirmance, that Brady's reissue patent violated the recapture rule. The recapture rule, however, bars certain reissues within the first two years after the original patent issued if the patentee voluntarily surrendered claim scope during the original prosecution. E.g., N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1340, 1349 (Fed. Cir. 2005); Ball Corp. v. United States, 729 F.2d 1429, 1433, 1436 (Fed. Cir. 1984). In this case, Brady did not apply for reissue until well after the two-year period had expired, making the recapture rule inapplicable. Thus, we need only determine whether the reissue violates the proscription in Section 251 that reissues outside the two-year period may not "enlarge[e] the scope of the claims of the original patent."

after issuance of the original patent, the reissue violated Section 251, and we affirm the district court's grant of summary judgment of invalidity.

This court has held:

A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent. A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects.

Tillotson, Ltd. v. Walbro Corp., 831 F.2d 1033, 1037 n.2 (Fed. Cir. 1987); see also In re Freeman, 30 F.3d 1459 (Fed. Cir. 1994).

In this case, the accused products did not infringe the claims of the original patent as construed by this court in SlipTrack Systems, Inc. v. Metal Lite, Inc., 113 Fed. Appx. 930 (Fed. Cir. Dec. 1, 2004), which held that the claim limitation "said stud having at least one hole formed therein proximal to said top end" was limited to a pre-existing hole. Under the principles of stare decisis and the Supreme Court's guidance in Markman, this court follows the claim construction of prior panels absent exceptional circumstances. Miken Composites, L.L.C. v. Wilson Sporting Goods Co., 515 F.3d 1331, 1338 n.* (Fed. Cir. 2008) ("[T]reating interpretive issues as purely legal will promote (though it will not guarantee) intrajurisdictional certainty through the application of stare decisis." (quoting Markman v. Westview Instruments, Inc., 517 U.S. 370, 391 (1996))).

Brady does not ask that we explicitly overrule the prior panel's construction of the claims of the original patent, and Brady admits that products that would not infringe the claims of the original patent do infringe reissue claim 11. This is because reissue claim 11 requires that "said stud having at least one hole formed therein proximal to said top

9

end <u>by an attachment means</u>." In other words, in reissue claim 11, the hole is not pre-existing but is formed using a self tapping screw (the attachment means disclosed in the specification). Because products in which the hole is not pre-existing but instead formed using a self-tapping screw (i.e., the accused products in this case) would not infringe the claims of the original patent but would infringe reissue claim 11, we conclude that reissue claim 11 enlarged the scope of the original patent. We affirm the district court's grant of summary judgment of invalidity as to that claim.

B.     <u>Attorney's Fees</u>

Metal Lite and Perfect Wall (collectively "Metal Lite") cross-appeal the district court's denial of their motion for attorney's fees. In reviewing a district court's decision on Section 285 attorney's fees, we review the decision as to whether the case is exceptional for clear error, and we review the subsequent determination as to whether fees are appropriate for abuse of discretion. <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc). Metal Lite argues that the district court erred in not finding the case exceptional because Brady made misrepresentations to the PTO during prosecution of the reissue patent, namely that claim 11 was narrower than the original claims. The district court determined that Brady or its counsel had not committed inequitable conduct:

> I can tell you that based upon everything I know of this case and these inventions, which is probably more than I ever care to know in a lifetime, that the record from what I can see does not support a conclusion of inequitable conduct by the patentee or counsel for the patentee.

J.A. at 1793. The district court did not clearly err in concluding that Brady did not commit inequitable conduct. In the reissue prosecution, Brady provided the PTO with this court's prior decision in which we limited the claims of the original patent to only

10

those with pre-existing holes.  Brady argued to the PTO that claim 11 was narrower based on the same arguments it advances here.  Nevertheless, the PTO could have rejected those arguments, and the district court did not clearly err in finding that Brady did not commit inequitable conduct and the case was not exceptional on that basis.

Metal Lite also argues that the case is exceptional because Brady filed suit in bad faith, knowing that claim 11 was invalid as a broadening reissue.  While Brady's press release stating that the reissue patent "removes the limitation recently imposed by the Court of Appeals" suggests that Brady may have known that its claim 11 was not narrower, the district court was in the best position to observe Brady and its counsel both during the prior case and this case.  We see no clear error in its determination that the present litigation was not brought in bad faith.

**III.**

In sum, we affirm the district court's summary judgment of invalidity as to reissue claim 11 because that claim enlarged the scope of the original patent claims and Brady applied for reissue more than two years after the original patent issued.  We also affirm the district court's denial of attorneys' fees.

2007-1460, -1486